

21st Floor
1251 Avenue of the Americas
New York, NY  10020-1104

**Katherine Bolger**
(212) 402-4068 tel
(212) 489-8340 fax

katebolger@dwt.com

October 18, 2021

The Honorable Edgardo Ramos
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

      Re:    *Jacob v. Lorenz*, Case No. 1:21-cv-06807 (ER)

Dear Judge Ramos:

      We represent Defendants Taylor Lorenz and The New York Times Company ("The Times") in the above-referenced action and write to request a pre-motion conference for Defendants' anticipated motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

      This is a defamation case brought by Ariadna Jacob, a manager of social media users, and her company Influences, Inc. based on The Times' publication of an article by Ms. Lorenz titled "Trying to Make It Big Online? Getting Signed Isn't Everything" (the "Article").[1] The Article describes the unique world of "collab houses," where young Internet influencers—many of them away from home for the first time—live together and post content on TikTok and Instagram in the hope of generating income and gaining a wider following. The Article is based, in part, on interviews with several of Jacob's former clients, who describe their public disputes with Jacob and problems that arose in certain collab houses associated with her. The Article also contains Jacob's responses to her former clients' comments and cites extensively to information Jacob and her representatives provided before publication.  Plaintiffs allege that the Article nonetheless contains false and defamatory statements about them.

      In essence, the Complaint seeks to hold Defendants accountable for truthfully presenting both sides of a newsworthy dispute in the emerging world of social media influencers. But as the Sixth Circuit recently explained in a similar case, articles that readers would reasonably interpret "as presenting two sides of [a] controversy" do not give rise to a claim for defamation. *See Croce v. New York Times Co.*, 930 F.3d 787, 793-95 (6th Cir. 2019) (affirming dismissal of a defamation claim based on an article that included "allegations and complaints" against the plaintiff, because "a reasonable reader would interpret the article as a standard piece of investigative journalism"). The same principle applies under New York law. *See, e.g.*, *Gorilla Coffee, Inc. v. New York Times Co.*, 32 Misc. 3d 1230(A) at *13 (Sup. Ct. Kings Cty. Aug. 8, 2011) (dismissing defamation claim because workers' statement was not defamatory in context of their public dispute with management). As Jacob has made clear in social media posts since the Article ran, Plaintiffs seek

---

[1] Available at https://www.nytimes.com/2020/08/14/style/influences-tiktok-management-brittany-broski.html. The Complaint incorporates this Article by reference, along with Plaintiffs' correspondence with Ms. Lorenz and Plaintiffs' contracts with various influencers.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002); Compl. ¶¶ 1, 23, 25, 35, 60.

**DWT.COM**

Anchorage | Bellevue | Los Angeles | New York
Portland | San Francisco | Seattle | Washington, D.C.

The Honorable Edgardo Ramos
October 18, 2021
Page 2

to silence legitimate criticism of their business operations by former clients. This is precisely the type of lawsuit that New York law forbids, as the New York legislature made clear when it expanded its anti-SLAPP law, N.Y. Civil Rights Law § 76-a, in 2020 to cover news reporting and require plaintiffs to pay defendants' legal fees when litigation is brought with the intent to chill speech protected by the First Amendment. N.Y. Civil Rights Law § 70-a.[2]

Accordingly, Defendants intend to move to dismiss the Complaint on the following grounds: (i) the Article is substantially true, as demonstrated by the Complaint and incorporated documents; (ii) many of the allegedly "false" statements are non-actionable because they are statements of opinion, not allegations of fact, or privileged as a fair report of an official proceeding; and (iii) the Complaint fails to properly allege actual malice.

**Truth:** Defamation plaintiffs must plead "facts that, if proven, would establish that the defendant's statements were not substantially true." *Tannerite Sports LLC v. NBC Universal News Grp.*, 864 F. 3d 236, 246 (2d Cir. 2017). Plaintiffs have failed to do so here. Most notably, Plaintiffs issued a "response" to The Times pre-publication, now incorporated by reference (Compl. ¶¶ 23, 60), that confirms facts that Plaintiffs now say are false: the terms of the rental arrangements with the clients, the requirement that house residents participate in marketing deals, and the breakdown of the relationships when Plaintiffs sought financial contributions from the former clients.

Typical of the deceptive pleading is the allegation that the Article falsely implies a connection between an influencer named Brittany Tomlinson and Plaintiffs. Compl. ¶ 35. Plaintiffs boldly state that Ms. Tomlinson "was not signed to Influences" but was instead signed to a company called "Creator Edge." Compl. ¶ 35. But Ms. Tomlinson's contract was with "Creator Edge dba Influences"—and Jacob signed the contract on behalf of that entity. Because a court "need not accept as true any allegations that are contradicted by documents deemed to be part of the complaint," these allegations fail as a matter of law. *In re Yukos Oil Co. Sec. Litig.*, No. 04-cv-5243, 2006 WL 3026024, at *12 (S.D.N.Y. Oct. 25, 2006).

**Protected Opinion**: Several of the statements Plaintiffs cite in the Complaint are statements of opinion, which are not actionable as a matter of law. *See Kesner v. Dow Jones & Co.*, 515 F. Supp. 3d 149, 170-71 (S.D.N.Y. 2021) (dismissing defamation claim premised on legally protected opinion). These opinions—including talent managers' views about how management relationships should be structured and an influencer's statement that staying in a collab house managed by Jacob was a "living nightmare"—cannot form the basis of a defamation claim.

**Lack of Defamatory Meaning**: Plaintiffs also challenge several statements that cannot reasonably be interpreted as conveying a defamatory meaning. *See Sandals Resorts Int'l Ltd. v. Google, Inc.*, 86 A.D.3d 32, 38 (1st Dep't 2011) (a statement is only defamatory if it "tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace"). For example, the Complaint's allegation that Jacob never asked Ms. Tomlinson whether she had "made any money"

---

[2] New York law applies to this matter because New York has the most significant interest in this litigation. *See Lee v. Bankers Tr. Co.*, 166 F.3d 540, 545 (2d Cir. 1999) (citation omitted).

The Honorable Edgardo Ramos
October 18, 2021
Page 3

from a viral video (Compl. ¶ 32) simply fails to carry any defamatory meaning.

**Privileged Statements**: Plaintiffs also challenge the Article's reporting on Ms. Tomlinson's California Labor Commission's complaint against Jacob. Compl. ¶¶ 34-35. These statements are privileged as a fair and true report of an administrative proceeding under New York Civil Rights Law § 74.

**Failure to Plead Actual Malice**: The Complaint should also be dismissed because Plaintiffs have not pled "'plausible grounds' to infer actual malice by alleging 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of actual malice." *Biro v. Conde Nast*, 807 F.3d 541, 546 (2d Cir. 2015). In this context, "actual malice" means Defendants knew the Article was false or acted with reckless disregard of whether it was false. *N.Y. Times Co. v. Sullivan*, 376 U.S. at 279-80. Plaintiffs are required to plead enough facts to create a reasonable expectation that discovery will reveal that Defendants "in fact entertained serious doubts as to the truth of the allegedly defamatory statements." *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001) (quoting *St. Amant, v. Thompson*, 390 U.S. 727, 731 (1968)). Plaintiffs failed to do so.

In trying to establish actual malice, the Complaint alleges only that Jacob told Lorenz before publication of her disagreement with certain claims made by the former clients. Compl. ¶¶ 34, 35. But actual malice "cannot be predicated on mere denials, however vehement," because "such denials are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error." *Edwards v. Nat'l Audubon Soc'y, Inc.*, 556 F.2d 113, 121 (2d Cir. 1977); *see also Contemporary Mission, Inc. v. New York Times*, 665 F. Supp. 248, 270 (S.D.N.Y. 1987) ("Publication in the face of a denial by plaintiffs of a statement's truth does not demonstrate actual malice.").

\* \* \*

In short, because Plaintiffs cannot and have not alleged that the allegedly defamatory statements are false, defamatory or spoken with actual malice, Defendants respectfully request a pre-motion conference to discuss their proposed motion to dismiss. Thank you for your consideration.

Respectfully submitted,

Davis Wright Tremaine LLP

*/s/ Katherine M. Bolger*

Katherine M. Bolger

cc:    Counsel for Plaintiffs via ECF