UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

---------------------------------------------------------------x

ARIADNA JACOB and INFLUENCES, INC., :
: Case No. 1:21-cv-06807
                Plaintiffs, :
:
       - against - :
:
TAYLOR LORENZ and THE NEW YORK :
TIMES COMPANY, :
:
                Defendants. :

---------------------------------------------------------------x

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION BY DEFENDANTS THE NEW YORK TIMES COMPANY AND TAYLOR LORENZ TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Katherine M. Bolger
Nimra H. Azmi
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Phone: (212) 489-8230
Fax:   (212) 489-8340
katebolger@dwt.com
nimraazmi@dwt.com

*Attorneys for Defendants The New York Times Company and Taylor Lorenz*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT ......................................................................................................................... 1

    I.     New York Law Applies ................................................................................... 1

    II.    Plaintiffs' Unpled Defamation by Implication Claim Must be Dismissed ............. 2

    III.   Plaintiffs' Express Defamation Claim Cannot Survive ........................................... 5

        A.     Statements 1, 2, 3, 6, 8, 9, 10, 11, 12, and 13 Are Substantially True ........ 6

        B.     Statement 6 is Indisputably Protected as Fair Report ................................ 7

        C.     Statements 1, 3, 7, 8, 11, and 12 Are Protected Opinion and Hyperbole ........................................................................................ 7

    IV.   Plaintffs Cannot Bring a Claim for Defamation Because They Do Not Like the Tone or Impression of the Article ...................................................................... 8

    V.    Plaintiffs Are Limited-Purpose Public Figures and Failed to Plead Actual Malice ........................................................................................................................ 8

CONCLUSION ...................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Becker v. Wells Fargo Bank NA, Inc.*,
   No. 2:10-cv-2799-TLN-KJN, 2014 WL 3891933 (E.D. Cal. Aug. 7, 2014),
   *R. & R. adopted by*, 2014 WL 12773790 (E.D. Cal. Sept. 9, 2014), *aff'd*,
   672 F. App'x 660 (9th Cir. 2016) ...................................................................................6

*Binn v. Bernstein*,
   No. 19 Civ. 6122, 2020 WL 4550312 (S.D.N.Y. July 13, 2020), *R. & R. adopted by*,
   No. 1:19-cv-6122, 2020 WL 4547167 (S.D.N.Y. Aug. 6, 2020) ..............................................5

*Biro v. Condé Nast*,
   883 F. Supp. 2d 441 (S.D.N.Y. 2012)................................................................................3, 5

*Blair v. Inside Ed. Prods.*,
   7 F. Supp. 3d 348 (S.D.N.Y. 2014) ......................................................................................6

*Brimelow v. N.Y. Times Co.*,
   No. 21-66, 2021 WL 4901969 (2d Cir. Oct. 21, 2021), *pet. for cert. docketed*,
   No. 21-1030 (U.S. Jan. 21, 2022) ......................................................................................10

*Chapin v. Knight-Ridder, Inc.*,
   993 F.2d 1087 (4th Cir. 1993) ...........................................................................................3, 4

*Cochran v. NYP Holdings, Inc.*,
   58 F. Supp. 2d 1113 (C.D. Cal. 1998), *aff'd*, 210 F.3d 1036 (9th Cir. 2000)..........................8

*Croce v. N.Y. Times Co.*,
   930 F.3d 787 (6th Cir. 2019) ................................................................................................8

*Davis v. Costa-Gavras*,
   580 F. Supp. 1082 (S.D.N.Y. 1984).....................................................................................2

*Dodds v. Am. Broad. Co.*,
   145 F.3d 1053 (9th Cir. 1998) ..............................................................................................4

*Herbert v. Lando*,
   781 F.2d 298 (2d Cir. 1986).................................................................................................5

*Kavanagh v. Zwilling*,
   578 F. App'x 24 (2d Cir. 2014) .........................................................................................3, 5

*Kesner v. Dow Jones & Co.*,
   515 F. Supp. 3d 149 (S.D.N.Y. 2021)..................................................................................3

*Kinsey v. New York Times Co.*,
   991 F.3d 171 (2d Cir. 2021) ..................................................................................................2

*La Liberte v. Reid*,
   966 F.3d 79 (2d Cir. 2020) ....................................................................................................5

*Masson v. New Yorker Magazine, Inc.*,
   501 U.S. 496 (1991) ...............................................................................................................6

*Newton v. Nat'l Broad. Co.*,
   930 F.2d 662 (9th Cir. 1990) .................................................................................................4

*In re Sanofi-Aventis Sec. Litig.*,
   774 F. Supp. 2d 549 (S.D.N.Y. 2011) ...............................................................................3, 10

*Thomas v. L.A. Times Commc'ns, LLC*,
   189 F. Supp. 2d 1005 (C.D. Cal.), *aff'd*, 45 F. App'x 801 (9th Cir. 2002) ........................4, 10

*Weinstein v. Friedman*,
   No. 94 CIV. 6803 (LAP), 1996 WL 137313 (S.D.N.Y. Mar. 26, 1996), *aff'd*,
   112 F.3d 507 (2d Cir. 1996) ..................................................................................................2

*White v. Fraternal Order of Police*,
   909 F.2d 512 (D.C. Cir. 1990) ...............................................................................................4

**State Cases**

*De Havilland v. FX Networks, LLC*,
   21 Cal. App. 5th 845 (2018) ...............................................................................................4, 5

*Denney v. Lawrence*,
   22 Cal. App. 4th 927 (1994) ..................................................................................................9

*Good Gov't Grp. of Seal Beach, Inc. v. Super. Ct.*,
   22 Cal. 3d 672, 150 Cal. Rptr. 258, 586 P.2d 572 (1978) .....................................................4

*Healthsmart Pac. v. Kabateck*,
   7 Cal. App. 5th 416 (2016) ....................................................................................................7

*Holy Spirit Ass'n for Unification of World Christianity v. New York Times Co.*,
   49 N.Y.2d 63 (1979) ..............................................................................................................7

*Hughes v. Hughes*,
   122 Cal. App. 4th 931 (2004) ................................................................................................6

*Mulder v. Donaldson, Lufkin & Jenrette*,
   161 Misc. 2d 698 (Sup. Ct. N.Y. Cty. 1994), *aff'd*, 208 A.D.2d 301 (1st Dep't 1995) ............7

*Sipple v. Found. For Nat. Progress*,

    71 Cal. App. 4th 226 (1999) ............................................................................................7

*Stepanov v. Dow Jones & Co.*,
    120 A.D.3d 28 (4th Dep't 2014) ................................................................................4, 5

**Rules**

Fed. R. Civ. P.
    12 ......................................................................................................................................5
    12(b)(6) .......................................................................................................................1, 11

**Other Authorities**

Amanda Perelli, *A TikTok mansion in turmoil YouTube rebrands FameBit, and
    the investors funding creator businesses*, BUSINESS INSIDER (June 18, 2020) ..........................9

Andrew Limbong, *TikTok Artists Think Of Backup Plans As Trump Signs Order
    To Ban The App*, NATIONAL PUBLIC RADIO (Aug. 7, 2020) .......................................9

Dan Whateley, *A TikTok influencer is renting Bella Thorne's mansion to live in
    and film. Here's the exact 9-age media kit it's using to pitch brands for
    sponsorships of the collab house*, BUSINESS INSIDER (Apr. 7, 2020) ........................9

Deanna Ting, *TikTok Royalty: Here are the stars you need to know*,
    DIGIDAY (Mar. 19, 2020) ..............................................................................................9

Katie Richards, *What Social Distancing Means for the Rise of Influencer Houses*,
    GLOSSY (Mar. 18, 2020) ..............................................................................................9

Taylor Lorenz, *Delayed Moves, Poolside Videos and Postmates Spon: The State
    of TikTok Collab Houses*, N.Y. TIMES (May 21, 2020) .............................................9

Defendants The Times and Lorenz submit this reply memorandum of law in further support of their motion pursuant to Fed. R. Civ. P. 12(b)(6) for an order dismissing Plaintiffs' FAC.[1]

## PRELIMINARY STATEMENT

Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss ("Response") confirms that they are Plaintiffs in search of a cause of action. The bulk of the Response is devoted to Plaintiffs' belief that the Article defames them by implication, but Plaintiffs failed to include a critical element of that claim in the Complaint: that Defendants intended to convey or endorsed the defamatory implication Plaintiffs ascribe to the Article. Nor could they make that allegation, given that the Article reported both Jacob's and her clients' viewpoints about their disputes.

Plaintiffs similarly have not pleaded an express defamation claim because the actual Statements published in the Article (as opposed to the gist or sting that Plaintiffs concoct) are substantially true, or privileged, or statements of opinion. And even if Plaintiffs had, somehow, made out these most basic elements of their claim, their claim must still be dismissed because Plaintiffs are public figures who failed to plausibly allege actual malice. In sum, the Article accurately reports both sides of the newsworthy disputes between Plaintiffs and their former clients that had already been playing out in the public eye. That Plaintiffs find the reporting uncomfortable does not make a viable defamation claim. This Court should dismiss the FAC with prejudice.

## ARGUMENT

**I.      New York Law Applies.**

Notwithstanding Plaintiffs' superficial arguments to the contrary, New York law applies to this action. Plaintiffs are correct that they allege (at least in the FAC, *compare* FAC ¶ 10 *with* Compl. ¶ 8) that Plaintiffs were domiciled in California at the time the Article was published and

---

[1] This reply memorandum of law incorporates the abbreviations set forth in Defendants' Opening Memorandum of Law ("Opening Memo" or "Mot."), ECF No. 17.

that newsgathering for the Article took place in part in California. But Plaintiffs overstate the importance of these allegations in light of the clear holding in *Kinsey v. New York Times Co.*, 991 F.3d 171 (2d Cir. 2021). Plaintiffs misleadingly quote *Kinsey* for the proposition that "[u]nder New York choice-of-law rules in defamation cases the state of the plaintiff's domicile will usually have the most significant relationship to the case, and its law will therefore govern," *id.* at 176–77, but do not mention that the next sentence is "But not always." *Id.* at 177.

The "but not always" is especially important here. In *Kinsey*, as here, the plaintiff alleged that another jurisdiction had a closer connection to the newsgathering activities and the facts in the alleged defamatory article than did New York. *Id.* But the Second Circuit, focusing on the conduct-regulating nature of the rules that govern defamatory conduct, held that New York law applied because "[a]s its name suggests, The Times is domiciled in New York and the alleged defamatory statement emanated from New York" [and] "New York has strong policy interests in regulating the conduct of its citizens and its media." *Id*. at 178. The reason for that policy is that a publisher needs to be able to predict the consequences of its speech acts. *See, e.g.*, *Davis v. Costa-Gavras*, 580 F. Supp. 1082, 1092 (S.D.N.Y. 1984); *Weinstein v. Friedman*, No. 94 CIV. 6803, 1996 WL 137313, at *8 (S.D.N.Y. 1996) (same). Here, as in *Kinsey*, New York has the greater interest in this litigation, because it was the law The Times relied on in publishing the Article.[2]

Regardless of which state's law applies, Plaintiffs' FAC must be dismissed.

## II.     Plaintiffs' Unpled Defamation by Implication Claim Must be Dismissed.

In the Response, Plaintiffs reformulate their claim, arguing that it rests almost wholly on defamation by implication. Plaintiffs repeatedly rely on the "implied defamatory meanings of the

---

[2] Plaintiffs also argue that if this Court does not apply California law here, then no court could ever choose the law of the plaintiff's domicile over a New York media defendant. Plaintiffs, of course, chose to bring this lawsuit in New York, rather than California, so their complaints about New York choice-of-law rules ring hollow.

statements and gists of the Article." Opp'n at 2, 11 (purporting to list those alleged defamatory implications). But Plaintiffs did not allege a claim for defamation by implication in their FAC, despite having the opportunity to amend once Defendants informed them of the Complaint's many deficiencies. Because Plaintiffs are not permitted to enlarge their pleading by argument in their Response, *In re Sanofi-Aventis Sec. Litig.*, 774 F. Supp. 2d 549, 562 (S.D.N.Y. 2011) ("[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss") (internal quotation marks omitted), this failure alone warrants dismissal of Plaintiffs' defamation by implication claim.[3]

This failure to plead defamation by implication is more than just formulaic. Under both New York and California law, defamation by implication claims require a plaintiff to plead an additional element – *i.e.* that Defendants intended to convey or endorsed the alleged defamatory meanings. In New York, alleging a defamatory implication "require[s] an 'especially rigorous showing' that (1) the language may be reasonably read to impart the false innuendo, and (2) the author intends or endorses the inference." *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 466 (S.D.N.Y. 2012) (quoting *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1093 (4th Cir. 1993)); *see also Kavanagh v. Zwilling*, 578 F. App'x 24, 24–25 (2d Cir. 2014) ("To survive a motion to dismiss a claim for defamation by implication….the plaintiff must make a rigorous showing that the language of the communication as a whole can be reasonably read both to impart a defamatory inference and to affirmatively suggest that the author intended or endorsed that inference.");

---

[3] Plaintiffs' request to amend the FAC to add allegations of intent should be denied. Plaintiffs have already amended their Complaint once after a pre-motion letter and conference. And while Plaintiffs claim that Defendants should have told them in the pre-motion letter that their unpled defamation by implication claim would have, if pled, been missing an essential element, this argument is nonsense. It is Plaintiffs' "responsibility to plead their case adequately in the first instance." *Binn v. Bernstein*, No. 19 Civ. 6122GHWSLC, 2020 WL 4550312, at *34 (S.D.N.Y. July 13, 2020), *report and recommendation adopted*, No. 1:19-cv-6122, 2020 WL 4547167 (S.D.N.Y. Aug. 6, 2020) (denying motion to file third amended complaint). And in any event, such an amendment would be futile because Defendants have offered no facts to support a finding of intent, nor is such intent evident in the Article itself.

*Kesner v. Dow Jones & Co., Inc.*, 515 F. Supp. 3d 149, 170 (S.D.N.Y. 2021) ("On a motion to dismiss, New York law holds claims of defamation by implication to a heightened standard."); *Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 37-38 (4th Dep't 2014)).

And in California, to plead a defamation by implication claim for public figures like Jacob, a plaintiff must allege that the "[defendant] 'intended to convey the defamatory impression.'" *Dodds v. Am. Broad. Co.*, 145 F.3d 1053, 1063–64 (9th Cir. 1998) (quoting *Newton v. Nat'l Broadcasting Co., Inc.*, 930 F.2d 662, 681 (9th Cir. 1990)); *see, e.g.*, *Thomas v. Los Angeles Times Commc'ns, LLC*, 189 F. Supp. 2d 1005, 1013 (C.D. Cal. 2002) (determining at the pleading stage that "no reasonable juror could find that Defendants intended to convey that impression"); *De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 869–70 (2018) (striking complaint for failure to plead intent). To do so, a plaintiff must allege facts that demonstrate that a defendant "either deliberately cast [her] statements in an equivocal fashion in the hope of insinuating a defamatory import to the reader, or that [it] knew or acted in reckless disregard of whether [its] words would be interpreted by the average reader as defamatory statements of fact." *Id.* at 870 (quoting *Good Gov't Grp. of Seal Beach, Inc. v. Superior Ct.*, 22 Cal. 3d 672, 684 (1978)).[4]

In this case, Plaintiffs have simply failed to satisfy this pleading requirement. Plaintiffs do not point to and, indeed, cannot point to any allegation in the FAC that even begins to provide a factual basis to conclude that The Times Defendants intended or endorsed the alleged defamatory meaning Plaintiffs ascribe to the story. To be sure, Plaintiffs assert defamatory implications in the

---

[4] New York and California are not alone in imposing this pleading requirement. *See Chapin, Inc.,* 993 F.2d at 1093 ("The language must not only be reasonably read to impart the false innuendo, but it must also affirmatively suggest that the author intends or endorses the inference."); *White v. Fraternal Ord. of Police*, 909 F.2d 512, 520 (D.C. Cir. 1990) ("[I]f a communication, viewed in its entire context, merely conveys materially true facts from which a defamatory inference can reasonably be drawn, the libel is not established. But if the communication, by the particular manner or language in which the true facts are conveyed, supplies additional, affirmative evidence suggesting that the defendant *intends* or *endorses* the defamatory inference, the communication will be deemed capable of bearing that [defamatory] meaning.").

4

FAC. Plaintiffs repeat—no fewer than five times—the allegations in FAC ¶ 60 that purport to set forth the alleged defamatory implications. Plaintiffs then devote at least five pages of the Response attempting to show that the Article conveys the defamatory implications they ascribe to it.[5] Opp'n at 6-11. But pleading the existence of a defamatory implication does not satisfy the requirement that Plaintiff plead that a defendant intended to convey the defamatory meaning. They are entirely separate elements. *See Kavanagh*, 997 F. Supp. 2d at 249.

In fact, Plaintiffs only address the intent requirement in a footnote on page 11.[6] There, Plaintiffs quixotically claim both that the standard does not apply to them and that they have satisfied it. In particular, Plaintiffs, citing *Herbert v. Lando*, 781 F.2d 298, 307 n.4 (2d Cir. 1986), claim they do not have to plead intent to convey the defamatory meaning if "the communication, read or viewed as a whole objectively, conveys that the publisher meant such meaning." Opp'n at 11. But that language is Plaintiffs' own. It is not from *Lando*, and, in any event, *Lando*, decided 21 years before *Biro*, did not address whether intent has to be pleaded in an implication case. In short, while Plaintiffs have argued that the Article contains defamatory implications, Plaintiffs have pleaded no facts that plausibly allege that Defendants intended them. Plaintiffs' claim, to the extent it rests on defamation by implication, must therefore be dismissed.

### III. Plaintiffs' Express Defamation Claim Cannot Survive.

The only claim Plaintiffs plead in the FAC is one for express defamation. As set forth in the Opening Memo and addressed in additional detail below, that claim fails as a matter of law.

---

[5] For example, they "do not contend that Statements 4,7, and 13. . .are, in and of themselves, defamatory," *Id.* at 9. Plaintiffs instead claim they create a defamatory implication. That is not enough.

[6] Plaintiffs also argue, citing *La Liberte v. Reid*, 966 F.3d 79 (2d Cir. 2020), that any heightened pleading standard would conflict with Fed. R. Civ. P. 12. But *La Liberte* dealt with the California anti-SLAPP statute. And the requirement that Plaintiffs must plead intent to convey a defamatory meaning in a defamation by implication case is not a pleading standard, but an essential element of the claim under New York and California law. *See Stepanov*, 120 A.D.3d at 38; *De Havilland,* 21 Cal. App. 5th at 869–70.

### a. Statements 1, 2, 3, 6, 8, 9, 10, 11, 12, and 13 Are Substantially True.

In the Opening Memo, Defendants explained that **Statements 1, 2, 3, 6, 8, 9, 10, 11**[7]**, 12, and 13** are substantially true. *See* Mot. at 5-10. In response, Plaintiffs offer a series of inconsequential differences to contend that the statements at issue are *not* substantially true. But "minor inaccuracies" cannot overcome substantial truth. *See, e.g.*, *Blair v. Inside Ed. Prods.*, 7 F. Supp. 3d 348, 357 (S.D.N.Y. 2014) (quoting *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516 (1991); *accord Hughes v. Hughes*, 122 Cal. App. 4th 931, 936 (2004) (same). Rather, a statement is true "so long as 'the substance, the gist, the sting, of the libelous charge be justified.'" *Blair*, 7 F. Supp. 3d at 357 (quoting *Masson*, 501 U.S. at 517).[8]

The facts Plaintiffs quibble with in the Response are just such alleged "minor inaccuracies." To use just a few examples, Plaintiffs contend that **Statement 6,** which states that Tomlinson alleged that Defendants improperly withheld "tens of thousands of dollars" from her, is false because it involved $23,683.82 and not $100,000. *See* Opp'n at 14-15. But regardless of the dollar amount, the gist and sting of the charge is substantially true and nonactionable. *See Becker v. Wells Fargo Bank NA, Inc.*, No. 10-cv-2799, 2014 WL 3891933, at *14 (E.D. Cal. Aug. 7, 2014) (noting that alleged sting in statements came from the indication that plaintiff did not pay his bills, not from the amounts supposedly owed). As for **Statement 9**, Plaintiffs agree that Jacob had cameras unilaterally installed in the GIV house, they just argue that the influencers in the GIV house were informed of it. *See* Opp'n at 16. But that does not change that Jacob installed the cameras and the GIV influencers were unhappy about it. As to **Statement 8**, despite Plaintiffs'

---

[7] Plaintiffs concede **Statement 11** is "literally true" and do not claim that **Statement 5** is false. Opp'n at 5.
[8] Despite Plaintiffs' editorializing that they find reliance on prepublication correspondence "dubious," it appears that the parties agree that the FAC references and relies on the prepublication responses Plaintiffs submitted to Lorenz (FAC ¶¶ 22, 24, 29, 32, 42, 47, 51, 52, 62) and the prepublication emails between them (FAC ¶¶ 21-22, 24), and that, as a consequence, they can be relied on in this Motion.

protestations to the contrary, Plaintiffs' prepublication correspondence confirms **Statement 8**'s gist that Influences was responsible for procuring brand deals for the influencers by stating that Influences "exclusively" held "per their contract" the ability to make these deals. Bolger Decl. Ex. 3 at 3. In sum, even if Plaintiffs allege there are minor inaccuracies in the Article, it does not render **Statements 1, 2, 3, 8, 9, 10, 11, 12,** and **13** materially false.

      b.  **Statement 6 Is Indisputably Protected as Fair Report.**

Despite Plaintiffs' odd suggestion to the contrary, *see* Opp'n at 19, both California and New York have long recognized the fair report privilege. *See, e.g.*, *Mulder v. Donaldson, Lufkin & Jenrette*, 161 Misc. 2d 698, 705 (Sup. Ct. N.Y. Cnty. 1994) (Section 74 privilege applies so long as the report gives a "substantially accurate description of" a proceeding); *accord Healthsmart Pacific v. Kabateck*, 7 Cal. App. 5th 416, 434 (2016). Plaintiffs in fact concede that the privilege applies to Defendants' reporting on the Tomlinson Petition, but claim the "false and misleading impression" created by the discussion of the proceeding somehow vitiates the privilege. *See* Opp'n at 19. But the fair report privilege relates to whether the Article accurately reported on the proceeding – not on alleged impressions the accurate description caused. *See Holy Spirit Ass'n for Unification of World Christianity v. N.Y. Times Co.*, 49 N.Y.2d 63, 67-68 (1979); *Sipple v. Found. For Nat. Progress*, 71 Cal. App. 4th 226, 240 (1999). **Statement 6** is privileged.

      c.  **Statements 1, 3, 7, 8, 11, and 12 Are Protected Opinion and Hyperbole.**

In the Opening Brief, **Statements 1, 3, 7, 8, 11,** and **12** are protected opinion and hyperbole. Those statements include characterizing Plaintiffs' behavior as "shameful," **Statement 12**, or interacting with Jacob as a "nightmare," **Statement 3**. In other words, the Statements contain language that any reasonable reader knows constitutes the subjective opinion of the speaker. *See, e.g.*, *Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1124 (C.D. Cal. 1998) (describing

reference to lawyers as "Nightmare Team" as "opinion[], colorfully expressed, which renders the statement at issue simply mere rhetorical hyperbole"). Therefore, for the reasons set forth in the Opening Memo (Mot. at 13-15), Plaintiffs claim as to these statements must be dismissed.

IV. **Plaintiffs Cannot Bring a Claim for Defamation Because They Do Not Like the Tone or Impression of the Article.**

Plaintiffs' Response makes clear that they see things differently than the people quoted in the Article and even though Defendants included their responses throughout the Article, Plaintiffs do not like how the Article makes them look. Plaintiffs' insistent refrain throughout the Response that they see it differently emphasizes the degree to which this case is like *Croce v. N.Y. Times, Co.*, 930 F.3d 787 (6th Cir. 2019). *See* Mot. at 23 (citing *Croce* for the proposition that critical statements are nonactionable because, taken as a whole, "a reasonable reader would. . .interpret the article as presenting two sides of this controversy"). In the Response, Plaintiffs argue that *Croce* is inapposite because, they claim, the *Croce* article included more qualifying language than this Article. But this argument mischaracterizes the Article, which juxtaposes the allegations by Jacob's former clients with her rebuttals, emphasizing the he said/she said nature of the story. *See, e.g.*, **Statement 9** (setting forth both sides of the dispute about cameras in the GIV home); **Statement 12** (setting forth both sides of the dispute about Young's photos). As a result, here, as in *Croce*, the Article makes no conclusions, much less defamatory conclusions about Plaintiffs.

V. **Plaintiffs Are Limited-Purpose Public Figures and Failed to Plead Actual Malice.**

Even if Plaintiff had plausibly alleged all the other elements of defamation, her claim must still fail because under either California or New York law, Plaintiff was required to and did not adequately plead actual malice. Plaintiffs concede that, if New York law applies, they must show actual malice, but argue that they are exempt from this requirement under California law because Jacob—though "on the cutting edge of the intersection between TikTok and influencing"—

engaged only in "private interactions" with social media influencers. Opp'n at 20. But Plaintiffs have a long record of thrusting themselves into the center of public debate on influencers and TikTok and, by their own actions, have made themselves limited-purpose public figures:

- On March 18, 2020, Jacob discussed the collab houses she was operating with Glossy.[9]
- On March 19, 2020, Jacob discussed TikTok influencers on Digiday.[10]
- On April 7, 2020, Jacob promoted the GIV collab house in an interview with Business Insider.[11]
- On May 21, 2020, Jacob discussed the collab houses she managed—GIV, Drip Crib, and KND—in another Times article written by Lorenz.[12]
- On June 18, 2020, the breakdown of the relationship between Jacob and Young was covered by Business Insider.[13]
- On August 7, 2020, Jacob was featured on *All Things Considered* on NPR discussing her management of influencers on TikTok and a petition she had signed addressed to then-President Trump to reconsider his ban of the platform.[14]

Plaintiffs' frequent media appearances to discuss these issues are precisely the kind of actions that make a limited-purpose public figure. *See, e.g.*, *Denney v. Lawrence*, 22 Cal.App.4th 927, 933–936 (1994) (plaintiff was a limited-purpose public figure based on giving press interviews related to topic at issue in case); *Thomas, LLC*, 189 F. Supp. 2d at 1011 (plaintiff was a limited-purpose public figure where he had been featured and quoted in numerous articles discussing topics regarding controversy in case). The June 18 BusinessInsider article also demonstrates that, contrary to Plaintiffs' protestations, Opp'n at 20, the disputes detailed in the Article were part of a public controversy that existed months before the Article's publication.

---

[9] Katie Richards, *What Social Distancing Means for the Rise of Influencer Houses*, GLOSSY (Mar. 18, 2020), https://www.glossy.co/fashion/what-social-distancing-means-for-the-rise-of-influencer-houses/.
[10] Deanna Ting, *TikTok Royalty: Here are the stars you need to know*, DIGIDAY (Mar. 19, 2020), https://digiday.com/marketing/tiktok-royalty-stars-need-know/.
[11] Dan Whateley, *A TikTok influencer is renting Bella Thorne's mansion to live in and film. Here's the exact 9-age media kit it's using to pitch brands for sponsorships of the collab house*, BUSINESS INSIDER (Apr. 7, 2020), https://tinyurl.com/mrxjumda.
[12] [12] Taylor Lorenz, *Delayed Moves, Poolside Videos and Postmates Spon: The State of TikTok Collab Houses*, N.Y. TIMES (May 21, 2020), https://tinyurl.com/2pynyb8b.
[13] Amanda Perelli, *A TikTok mansion in turmoil YouTube rebrands FameBit, and the investors funding creator businesses*, BUSINESS INSIDER (June 18, 2020), https://tinyurl.com/2p8d6yzy.
[14] Andrew Limbong, *TikTok Artists Think Of Backup Plans As Trump Signs Order To Ban The App*, NAT'L PUBLIC RADIO (Aug. 7, 2020), https://tinyurl.com/ktvfm789.

Thus, under both New York and California law, Plaintiffs must plausibly plead actual malice. Yet, they have not. For all the reasons set forth in the Opening Memo, Plaintiffs' conclusory pastiche of allegations of actual malice actually included in the FAC do not cut it. Mot. at 19-22. Presumably recognizing this deficiency, Plaintiffs' Response offers an entirely new barrage of arguments *that are not pled in their FAC* and argues that even if those purported facts separately do not show actual malice, the court must lump them together to collectively support an allegation of actual malice. Opp'n at 22. These arguments should be disregarded because they rely on facts not alleged in the FAC. *See In re Sanofi*-Aventis, 774 F. Supp. 2d at 562.

Even if this Court were to consider these unpled allegations, the factors, taken together, do not constitute allegations of purposeful avoidance of the truth. Tellingly, the case that Plaintiffs rely upon for their multi-factor approach, *Brimelow v. N.Y. Times Co.*, No. 21-66-CV, 2021 WL 4901969 (2d Cir. Oct. 21, 2021), in fact holds the opposite. In *Brimelow*, the plaintiff alleged that The Times acted with actual malice based on a list of factors almost identical to those at issue here, including that The Times allegedly ignored plaintiffs' denials, acted with ill-will or a pre-conceived narrative, failed to investigate, and failed to act impartially. *Compare id.* at *3 *with* Opp'n at 20-21. The *Brimelow* court considered these factors and concluded that they did not add up to actual malice, ultimately holding that there was "no combination of allegations from which one could plausibly infer that The Times was purposely avoiding the truth in its reporting." *Id.* Thus, under the Second Circuit's *Brimelow* analysis, Plaintiffs have not alleged actual malice and their defamation claims must be dismissed.

## CONCLUSION

For the foregoing reasons, the FAC should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

Dated: February 8, 2022

                                  DAVIS WRIGHT TREMAINE LLP

                                  */s/ Katherine M. Bolger*
                                  Katherine M. Bolger
                                  Nimra H. Azmi
                                  DAVIS WRIGHT TREMAINE LLP
                                  1251 Avenue of the Americas, 21st Floor
                                  New York, NY 10020-1104
                                  Phone:   (212) 489-8230
                                  Fax:      (212) 489-8340
                                  katebolger@dwt.com
                                  nimraazmi@dwt.com

                                  *Attorneys for Defendants The New York Times Company and Taylor Lorenz*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed and served via the Court's CM/ECF portal on this 8th day of February 2022 to all counsel of record.

By: /s/ *Katherine M. Bolger*
Katherine M. Bolger