LBCBJACC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

ARIADNA JACOB, et al,

        Plaintiffs,

    v.                                      21 Civ. 6807  (ER)

THE NEW YORK TIMES COMPANY, *et al*,

        Defendants.
                               Teleconference
------------------------------x
                              New York, N.Y.
                              November 12, 2021
                              9:00 a.m.

Before:

                HON. EDGARDO RAMOS,

                            District Judge

                 APPEARANCES

CAMARA & SIBLEY, LLP
    Attorneys for Plaintiffs
BY:  JOSEPH D. SIBLEY, IV

REISS SHEPPE, LLP
    Attorneys for Plaintiffs
BY:  MATTHEW H. SHEPPE


DAVIS WRIGHT TREMAINE, LLP
    Attorneys for Defendants
BY:  KATHERINE M. BOLGER
     NIMRA AZMI


Also Present:  Karen Chesley, The New York Times
               Jessica Hui, The New York Times

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

LBCBJACC

1              (Case called)

2              THE DEPUTY CLERK:  Counsel, please state your name for
3    the record starting with plaintiff.

4              MR. SHEPPE:  Matthew Sheppe from Reiss Sheppe for
5    plaintiffs.

6              Good morning, your Honor.

7              THE DEPUTY CLERK:  For defendant.

8              MS. BOLGER:  Good morning, your Honor.

9              Katherine Bolger from Davis Wright Tremaine on behalf
10   of The New York Times and Taylor Lorenz.  For housekeeping
11   purpose, Karen Chesley and Jessica Hui of The New York Times
12   are both on the line with me.

13             THE COURT:  Good morning to you all.  This matter is
14   on for a premotion conference.  I note for the record that it
15   is being conducted by telephone.  This is the first time that
16   the parties have appeared before me.  So Mr. Sheppe, let me
17   begin with you.  Tell me a little bit about your case.

18             MR. SHEPPE:  Your Honor, another housekeeping matter.
19   Joe Sibley who has a motion Pro Hac before your Honor is also
20   on the call, and I believe he wanted to speak for plaintiffs if
21   that's all right with your Honor.

22             THE COURT:  That's perfectly fine.  Mr. Sibley.

23             MR. SIBLEY:  Good morning, your Honor.

24             Our case is basically, we have a woman that created a
25   business.  I had to do some education myself and consult with

LBCBJACC

my kids about this.  These TikTok influencers are really big and she kind of was on the cutting edge of that and had a lot of really hot prospects.  Ms. Lorenz is a pretty prominent journalist for the Times, took an interest in this subject and authored a column, I guess it was August of 2020.  Essentially we contend that there was some materially false statements that were made in that column that disparage Ms. Jacob and her business and caused the lost of a pretty substantial amount of profits.  A lot of those influencers that she had in the contract wound up going to other agencies.

We think it's kind of a classic defamation case where we've got representational injury, per se, as well as special damages.  I know Ms. Bolger's got her arguments that she's laid out in her letter, but we think that there's definitely a viable defamation claim here.

There's an actual malice issue, your Honor, that's been raised.  We don't think Ms. Jacob is a public figure.  I think the only other way that comes into play is under New York state law.  I believe that there's a statute in effect that would make actual malice part of the elements of our claim.

However, your Honor, we contend that California law applies because Ms. Jacob was a resident in California when this occurred, when the column was written, and the substantial amount of the reporting was focused on California.

Those are kind of the issues legally and factually

LBCBJACC

1    that underlie our claim, your Honor.

2             THE COURT:  Mr. Sibley, let me ask if you, if I
3    determine that New York law applies, would the actual malice
4    requirement therefore kick in?

5             MR. SIBLEY:  Your Honor, I haven't looked at that in
6    detail.  I know I have another case in New York state court
7    where the anti-SLAPP statute has come into play.  I know that
8    there's an actual malice requirement with respect to certain
9    types of speech.

10            My suspicion is that -- two issues.  One issue is, I
11   don't believe that the anti-SLAPP statute would apply in
12   federal court; however, the question would be whether there's
13   substantive rule of law that would be supplied by New York
14   would impose that actual malice requirement.

15            And, your Honor, without doing the research on it, I
16   think the answer is probably yes.  However, I do think that
17   we've adequately pleaded actual malice.  I think we get there
18   anyway, but I did want to flag that issue just because we don't
19   want to be accused of waiving it or something.

20            THE COURT:  Ms. Bolger.

21            MS. BOLGER:  Hi, there.  Your Honor, when we wrote to
22   your Honor, we asked him permission for leave to move to
23   dismiss the complaint on a bunch of grounds.  One of which was
24   that we argued that the plaintiff will never be able to plead
25   material falsity as they're required to do under *Tannerite*

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

LBCBJACC

because the documents referenced and incorporated in the complaint establish that actually the article is substantially true.

The article of course is a pretty fair two-sided response to a newsworthy controversy.  Ms. Jacob's relationship with these TikTok influencers had been public.  In fact, because of the nature of the way these guys communicate, some of them had even been live streamed, your Honor.  So the article actually talks about what the influencers say in it, and it includes all of Ms. Jacob's responses to those allegations.  So the sort of article itself includes extensive responses from Ms. Jacob.

And in the complaint, the plaintiff references the communications they had with New York Times, so we would argue, your Honor, that those communications between Ms. Lorenz and Ms. Jacob would be included by reference in the complaint.

When you look at them, there's sort of no way the plaintiffs would be able to prove material falsity.  We gave you one example in the complaint, your Honor, of the grievance between influencers and Ms. Jacob, but I'll give you sort of another example.

In paragraph 40 of the complaint, the defendant say it is false.  The words they use, that the plaintiff, quote, Threaten to throw out all of the girls in one influencer's house unless they posted content eights times a day.

LBCBJACC

1      If your Honor were looking at the response when
2 Ms. Lorenz ask Ms. Jacob about that very fact, Ms. Jacob
3 actually admits it.  She says, Ms. Jacob had a conversation
4 with the individual, stated they needed to perform their
5 obligations or they would need to leave the house, right.  So
6 we think we can prove that the statements in the complaint are
7 substantially true such that the plaintiff will never be able
8 to plead material falsity.
9      And we also, your Honor, do believe that the actual
10 malice requirement applies here.  One, because we think New
11 York law applies.  And actually, your Honor, we kind of think
12 they pled it.  In the complaint, the plaintiff talks about the
13 nexus between this action and New York in paragraph 8, and so
14 we think New York choice of law applies.
15      There is no question that the substantive portions of
16 the New York anti-SLAPP statute do apply in federal court, that
17 was the *Palin* case decided by Judge Rakoff, and the *Coleman*
18 case out of the Eastern District of New York, so that's already
19 sort of been established.
20      THE COURT:  Can I ask you, Ms. Bolger, you're not
21 relying or you're not asserting that Ms. Jacob is a public
22 figure, are you or it doesn't matter?
23      MS. BOLGER:  We don't.  I think it would matter if we
24 were under California law, your Honor, and I do think she's a
25 public figure, but I don't think California law applies, but I

LBCBJACC

do think she's a public figure.

Truly, your Honor, there had been a lot of previous writing about this dispute about the TikTok influencers and Ms. Jacob in this particular world. So we think we can make her a public figure, but we don't think we need to, your Honor, is the takeaway.

THE COURT: Let me also ask you if I could, whether something is false or not, is that something that I can -- I mean, if it's alleged in the complaint and there are no documents that you can cite to that are incorporated by reference or attached to the complaint, how can I make that determination?

MS. BOLGER: Two things, your Honor. The short answer to that is that, whether something is true is a question of law for the Court.

And, in fact, in the *Tannerite* decision, the Second Circuit decision *Tannerite*, the court is really explicit that the plaintiff has to plead facts that can plausibly establish that the defendant's statements were not substantially true.

And actually, as a result, courts in the Southern District of New York have been dismissing cases for failure to plead falsity. There's a bunch of cases I can list for you, your Honor; *Pastore* and one called *Flynn v. CNN* which was just decided last week.

The key here, your Honor, is that the reason I feel we

LBCBJACC

can make that argument is because there are documents incorporated into the complaint that show the truth of the statement.  In the *Chapman* case in the Second Circuit, your Honor, the court said that you can look at documents incorporated by reference.

And if you take a look at paragraph 21 through 23 of the complaint, the plaintiff talks about the documentation that Jacob provided to the New York Times prepublication, and we would take the position, your Honor, that that is all incorporated by reference.  And if you took a look at them, your Honor, you would know that the statements were substantially true.

I think, your Honor, had they not incorporated documents by reference, I might be having a different conversation with you, but I do think because the documents are incorporated by reference, your Honor could dismiss for failure to plead falsity as those other cases I mentioned have done.

Second answer to that question, your Honor, is a little bit more complicated.  And that is that, when the plaintiff responded to our letter to move to dismiss the complaint, it kind of changed the goal post a little bit of what they say the complaint means.

Specifically they say in the letter, and I'm quoting, that the truth or falsity of the facts, quote, are not material to the success of the plaintiff's defamation claim.

LBCBJACC

1          And then they seem to sort of change the allegations
2    in the complaint.  To give you another sort of specific
3    example, in the complaint at paragraph 35 they say:  First and
4    importantly, Tomlinson's was not signed to influences.  And
5    then they say they, they are falsely suggesting that it was
6    influences who was responsible for failing to pay fees to
7    Tomlinson.
8          But in the letter, your Honor, on the second page,
9    they literally refer to that allegation as nonessential, so
10   it's important in the complaint but nonessential in the letter.
11         And we find ourselves with a response that suggest
12   that it doesn't matter whether the statements are true or
13   false, they win anyway.
14         Of course it matters whether the statements are true
15   or false.  It's a defamation case.  You can't tell, your Honor,
16   if the plaintiffs are pleading a traditional defamation claim.
17   These statements are false.  We are defamed, or if they're
18   trying to plead something else.  These statements are true, but
19   it means something false or something like that.  In which
20   case, I have different answers, your Honor.
21         I think the answer is that, I can make a motion to
22   your Honor that makes all these arguments because -- but the
23   truth is still essential, your Honor. I think the answer you
24   would give me would be, hey, New York Times, you win, but the
25   plaintiff has leave to amend.

LBCBJACC

1       I wondered if it was worth discussing having the
2  plaintiff amend now to tell me what's he's really arguing,
3  because you can't have it both ways.  The plaintiffs sort of
4  needs to pick a course on the question of truth.
5          THE COURT:  So let's ask him.  Mr. Sibley.
6          MR. SIBLEY:  Yes, your Honor.  This is Joseph Sibley.
7  I think we explained this in our letter.  If you look at what
8  we really plead, yes, we do make that statement that there's an
9  issue about where Ms. Tomilson was signed.
10         But what we say is, regardless of who she was signed
11 to -- because I don't think who she was signed to -- for
12 example, if the only thing we were complaining about is, hey,
13 you got it wrong as to which entity she was signed to.  I'm not
14 even sure that's defamatory.  That wouldn't be the basis of a
15 claim.
16         The basis of the claim is, regardless of who owed
17 Ms. Tomilson the money, we were accused of withholding
18 payments.  We are claiming falsity.  It's just that Ms. Bolger
19 wants to focus on sort of nonessential aspects of what she
20 claims are substantially true.
21         Even if it's the case that it's substantially true
22 that Ms. Tomilson was signed to the entity that they claim she
23 was signed to, that's not the substantial truth that matters.
24 The substantial truth that matters would be, is it true that
25 Ms. Jacob and her entity were withholding the payment?

LBCBJACC

1    I think if you look at the overall complaint, there's
2 just so many more important defamatory aspects to it to focus
3 on these -- I mean, hairsplitting kind of issues that are not
4 really the gravamen of our complaint, it's not going to be case
5 dispositive.  Even if we were to amend and remove that
6 allegation, it's not going to change the result.
7    THE COURT:  Let me ask you, do you want take the
8 opportunity to amend your complaint now so that these issues
9 can be further refined?
10   MR. SIBLEY:  Well, I suppose we can do that, your
11 Honor.  I think we're probably going to wind up in the same
12 place.  However, I do want to take issue with this
13 incorporation by reference argument.
14   As your Honor I'm sure knows, it's often with a Rule
15 12(b)(6) motion if a contract is referenced in a defamation,
16 for example, if a news article is referenced, the court
17 considers that in connection with a motion to dismiss because
18 those are sort of essential to the complaint.
19   I've never seen a case where someone mentions in a
20 complaint that, hey, we sent these communications, these emails
21 to the journalist's contentions, and that becomes something
22 that the court can consider on a Rule 12(b)(6). I don't have a
23 problem with the Court considering it.  We're not afraid of it.
24   The problem is going to be that -- it's essentially
25 going to become like a for summary judgment at that point,

LBCBJACC

which I'm okay with.  As a matter of substantial truth that these documents that we sent to them prove that what they say is substantially true, I'm okay with that.

The problem is that it's not just the documents. There are also phone conversations that were had, so we have to supplement them with declarations and things like that.  That's my only concern about the phone conversations between the parties prepublication.

We're happy to amend and I guess clean this up a little bit, but we have to have the allegation I think in the complaint that we did provide Ms. Lorenz with refuting documentation because that's how we address the actual malice issue.

I just don't know how the Court wants to deal with that aspect of it, because I'm not sure that that's an appropriate document outside the pleadings the Court could consider in a 12(b)(6).

I don't have a problem with the Court looking at that at the outset, because if the Court has a disagreement with us about it, it would be better to know now than down the road. I'm not sure 12(b)(6) is the appropriate mechanism to do that.

THE COURT:  If you think that you can amend the complaint, why don't you do that.  Can you do that in a week, by next Friday?

MR. SIBLEY:  Yes, your Honor.

```
LBCBJACC
```

1             THE COURT:  So do that.
2             And, Ms. Bolger, what I will ask you to do is take a
3    look at the amended complaint, see whether you still think that
4    a motion to dismiss is appropriate.
5             And if so, you can go ahead and make the motion.  You
6    don't need to come back with another premotion letter.  You can
7    do that within three weeks from next Friday.
8             MS. BOLGER:  Your Honor, would it be okay to do 30
9    days just because of the holiday.
10            THE COURT:  Sure, so one month.  Mr. Sibley, one month
11   to respond.
12            MR. SIBLEY:  That's fine, your Honor.
13            THE COURT:  And two weeks to reply.  Okay.
14            MR. SIBLEY:  Thank you, your Honor.
15            THE COURT:  Okay.  Is there anything else that we
16   should do today, therefore, Mr. Sibley?
17            MR. SIBLEY:  I don't think from our side, your Honor.
18            THE COURT:  Ms. Bolger?
19            MS. BOLGER:  No.  Thank you, your Honor.
20            THE COURT:  We're adjourned.
21            (Adjourned)