UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

------------------------------------------------------------- x

ARIADNA JACOB and INFLUENCES, INC.,          :
                                             :          Case No. 1:21-cv-06807
                          Plaintiffs,        :
                                             :
              - against -                    :          ORAL ARGUMENT REQUESTED
                                             :
TAYLOR LORENZ and THE NEW YORK               :
TIMES COMPANY,                               :
                                             :
                          Defendants.        :
------------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION BY DEFENDANTS THE NEW YORK TIMES COMPANY AND
<u>TAYLOR LORENZ TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT</u>**

Katherine M. Bolger
Nimra H. Azmi
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Phone:      (212) 489-8230
Fax:          (212) 489-8340
katebolger@dwt.com
nimraazmi@dwt.com

*Attorneys for Defendants The New York
Times Company and Taylor Lorenz*

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ..................................................................................... 1

II.   FACTUAL & PROCEDURAL BACKGROUND .......................................................... 2

    A.    The Parties ........................................................................................................ 2

    B.    Plaintiffs' Contentious Relationships with Their Influencer Clients .................... 2

    C.    The Article ........................................................................................................ 3

    D.    Plaintiffs' Earlier Complaints and the Court's Dismissal Order ........................... 3

    E.    The Second Amended Complaint ........................................................................ 5

III.  ARGUMENT ............................................................................................................. 6

    A.    This Defamation Case Must Be Dismissed .......................................................... 6

    B.    On Their Third Chance, Plaintiffs Still Fall Short of Pleading Defamation ........... 7

        1.    Plaintiffs' Amended Allegations Fail to Plead Actual Malice as to
            Statements 3, 8, 9, 12, and 14. ................................................................... 7

        2.    Plaintiffs' Recycled and Already-Rejected Allegations Cannot
            Establish Actual Malice. ........................................................................... 13

        3.    Even Added Together, Plaintiffs' Allegations Do Not Amount To
            Actual Malice. ......................................................................................... 15

        4.    Plaintiffs Again Fail to Make the "Rigorous Showing" Necessary
            to Allege Defamation by Implication. ....................................................... 16

    C.    The New Claims Should Be Rejected .................................................................. 19

    D.    Plaintiffs' Belated Tort Claims Must Be Dismissed ............................................ 21

        1.    Plaintiffs' Tagalong Tort Claims Must Be Dismissed as
            Duplicative of Their Defamation Claim. ................................................... 21

        2.    Jacob Fails to State Her IIED Claim. ......................................................... 23

        3.    Plaintiffs' Tortious Interference with Prospective Economic
            Advantage Claim Must Be Dismissed. ...................................................... 24

IV.   CONCLUSION .......................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adelson v. Harris*,
   973 F. Supp. 2d 467 (S.D.N.Y. 2013)..........................................................................6

*Anyanwu v. Columbia Broad. Sys., Inc.*,
   887 F. Supp. 690 (S.D.N.Y. 1995) .....................................................................21, 22

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................................................6

*Bement v. N.Y.P. Holdings, Inc.*,
   307 A.D.2d 86 (1st Dep't 2003) .................................................................................24

*Biro v. Conde Nast*,
   883 F. Supp. 2d 441 (S.D.N.Y. 2012)...................................................................16, 18

*Biro v. Conde Nast*,
   963 F. Supp. 2d 255 (S.D.N.Y. 2013)........................................................................6, 7

*Bose Corp. v. Consumers Union of U.S.*,
   466 U.S. 485 (1984).......................................................................................................7

*Brancaleone v. Mesagna*,
   290 A.D.2d 467 (2d Dep't 2002) ................................................................................22

*Brian v. Richardson*,
   87 N.Y.2d 46 (1995) ...................................................................................................18

*Brimelow v. New York Times Co.*,
   No. 21-66-CV, 2021 WL 4901969 (2d Cir. Oct. 21, 2021).................................9, 15

*BYD Co. Ltd. v. VICE Media LLC.*,
   531 F. Supp. 3d 810 (S.D.N.Y. 2021),
   *aff'd*, No. 21-1097, 2022 WL 598973 (2d Cir. Mar. 1, 2022),
   *cert. denied*, 143 S. Ct. 103 (2022) ...........................................................................8

*Carvel Corp. v. Noonan*,
   3 N.Y.3d 182 (2004) ...................................................................................................24

*Cassini v. Advance Publications, Inc.*,
   41 Misc. 3d 1202(A), (Sup. Ct. N.Y. Cty. 2013),
   *aff'd*, 125 A.D.3d 467 (1st Dep't 2015)....................................................................24

*Chaiken v. VV Pub. Corp.*,
   No. 91 CIV 2102 (LAP), 1994 WL 876418 (S.D.N.Y. Mar. 25, 1994) ................................12

*Church of Scientology Int'l v. Behar*,
   238 F.3d 168 (2d Cir. 2001).............................................................................................9

*Contemporary Mission, Inc. v. N.Y. Times*,
   665 F. Supp. 248 (S.D.N.Y. 1987) ...............................................................................13, 14

*Croce v. New York Times Co.*,
   930 F.3d 787 (6th Cir. 2019) ..........................................................................................17

*Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*,
   551 F. Supp. 3d 320 (S.D.N.Y. 2021)...............................................................................6

*Desouza v. Off. of Child. & Fam. Servs.*,
   No. 18CV2463PKCSMG, 2019 WL 2477796 (E.D.N.Y. June 12, 2019) .............................20

*Edwards v. Nat'l Audubon Soc., Inc.*,
   556 F.2d 113 (2d Cir. 1977).............................................................................................18

*Franco v. Diaz*,
   51 F. Supp. 3d 235, 244 (E.D.N.Y. 2014) .......................................................................22

*Freihofer v. Hearst Corp.*,
   65 N.Y.2d 135 (1985) .....................................................................................................24

*Garrison v. Louisiana*,
   379 U.S. 64 (1964).............................................................................................................7

*Gross v. N.Y. Times Co.*,
   281 A.D.2d 299 (1st Dep't 2001) .....................................................................................8

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
   491 U.S. 657 (1989)....................................................................................................11, 13

*Hengjun Chao v. Mount Sinai Hosp.*,
   476 F. App'x 892 (2d Cir. 2012) .................................................................................21, 22

*Henry v. Fox News Network LLC*,
   No. 21-CV-7299 (RA), 2022 WL 4356730 (S.D.N.Y. Sept. 20, 2022) ...............................18

*Herod's Stone Design v. Mediterranean Shipping Co. S.A.*,
   434 F. Supp. 3d 142 (S.D.N.Y. 2020), *aff'd*, 846 F. App'x 37 (2d Cir. 2021).......................4

*Highland Capital v. Dow Jones*,
   178 A.D.3d 572 (1st Dep't 2019) .....................................................................................25

*Huggins v. Nat'l Broad. Co.*,
  No. 119272/95, 1996 WL 763337 (Sup. Ct. N.Y. Cty. Feb. 7, 1996) ...................................25

*Hustler Magazine, Inc. v. Falwell*,
  485 U.S. 46 (1988) ......................................................................................................................23

*Just Play, LLC v. A.S. Plastic Toys Co.*,
  No. 19 CIV. 9399 (ER), 2022 WL 580876 (S.D.N.Y. Feb. 25, 2022) ...................................24

*Kerik v. Tacopina*,
  64 F. Supp. 3d 542 (S.D.N.Y. 2014) ........................................................................................10

*Kipper v. NYP Holdings Co.*,
  12 N.Y.3d 348 (2009) ...................................................................................................................8

*Levin v. McPhee*,
  917 F. Supp. 230 (S.D.N.Y. 1996), *aff'd*, 119 F.3d 189 (2d. Cir. 1997) ...............................22

*Lindberg v. Dow Jones & Co., Inc.*,
  No. 20-CV-8231 (LAK), 2021 WL 5450617 (S.D.N.Y. Nov. 22, 2021) ...................10, 11, 12

*Loeb v. New Times Comms. Corp.*,
  497 F. Supp. 85 (S.D.N.Y. 1980) .............................................................................................14

*McDougal v. Fox News Network, LLC*,
  489 F. Supp. 3d 174 (S.D.N.Y. 2020) ...................................................................................7, 13

*Mitchell v. Am. Arb. Ass'n*,
  No. 17-CV-8566 (PAE), 2018 WL 10419732 (S.D.N.Y. May 17, 2018) ..............................20

*New York Times Co. v. Sullivan*,
  376 U.S. 254 (1964) ......................................................................................................................6

*Oakley v. Dolan*,
  No. 17-CV-6903 (RJS), 2020 WL 818920 (S.D.N.Y. Feb. 19, 2020) ....................................18

*Pagan v. N.Y. State Div. of Parole*,
  No. 98 Civ. 5840(FM), 2002 WL 398682 (S.D.N.Y. Mar. 13, 2002) ....................................20

*Palm Beach Strategic Income, LP v. Salzman*,
  457 F. App'x 40 (2d Cir. 2012) ................................................................................................20

*Partridge v. State*,
  173 A.D.3d 86 (3d Dep't 2019) ................................................................................................17

*Prince v. Intercept*,
  No. 21-CV-10075(LAP), 2022 WL 5243417 (S.D.N.Y. Oct. 6, 2022)......................................9

*Rahman v. Fischer,*
    No. 08 Civ. 4368(DLC), 2010 WL 1063835 (S.D.N.Y. Mar. 22, 2010).................................20

*Rapoport v. Asia Elecs. Holding Co.,*
    88 F. Supp. 2d 179 (S.D.N.Y. 2000)........................................................................19

*Restis v. Am. Coalition Against Nuclear Iran, Inc.,*
    53 F. Supp. 3d 705 (S.D.N.Y. 2014).........................................................................22

*Sabratek Corp. v. Keyser,*
    No. 99 CIV. 8589 (HB), 2000 WL 423529 (S.D.N.Y. Apr. 19, 2000)..................................18

*Small Bus. Bodyguard Inc. v. House of Moxie,*
    230 F. Supp. 3d 290 (S.D.N.Y. 2017).......................................................................18

*Snyder v. Phelps,*
    562 U.S. 443 (2011)..........................................................................................23

*St. Amant v. Thompson,*
    390 U.S. 727 (1968).......................................................................................7, 8

*Stepanov v. Dow Jones & Co.,*
    120 A.D.3d 28 (1st Dep't 2014) ............................................................................16

*Tannerite Sports, LLC v. NBCUniversal New Grp.,*
    *a division of NBCUniversal Media, LLC*, 864 F.3d 236 (2d Cir. 2017)................................19

*Wexler v. Allegion (UK) Ltd.,*
    No. 16-cv-2252, 2018 WL 1626346 (S.D.N.Y. Mar. 30, 2018)........................................22

*Wilson v. New York,*
    No. 15-CV-23 (CBA) (VMS), 2018 WL 1466770 (E.D.N.Y. Mar. 26, 2018).......................17

*Woods v. Evansville Press Co., Inc.,*
    791 F.2d 480 (7th Cir. 1986) ...............................................................................17

*Y.D. v. New York City Dep't of Educ.,*
    No. 14CV1137-LTS, 2016 WL 698139 (S.D.N.Y. Feb. 19, 2016)....................................24

*Yiamouyiannis v. Consumers Union of U. S., Inc.,*
    619 F.2d 932 (2d Cir. 1980)................................................................................23

**Statutes**

N.Y. Civil Rights Law § 76-a(2) ................................................................................4, 7

**Other Authorities**

Fed. R. Civ. P. 12(b)(6).....................................................................................1, 25

Defendants The New York Times Company ("The Times") and Taylor Lorenz ("Lorenz") (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion pursuant to Fed. R. Civ. P. 12(b)(6) for an order dismissing with prejudice the Second Amended Complaint ("SAC") of Plaintiffs Ariadna Jacob ("Jacob") and Influences, Inc. ("Influences") (collectively, "Plaintiffs").

## I.    PRELIMINARY STATEMENT

This is Plaintiffs' third attempt to plead a defamation action arising out of an article titled *Trying to Make It Big Online? Getting Signed Isn't Everything* written by Lorenz and published in *The New York Times* on August 14, 2020 (the "Article"). *See* Declaration of Katherine Bolger ("Bolger Decl."), Ex. 1. The Article offers a balanced account of disputes between Jacob and her former clients in the unique world of "collab houses," where young Internet influencers, many of them teenagers away from home for the first time, live together and post content on social media platforms like TikTok and Instagram in the hopes of gaining money and fame.

The SAC, filed after this Court dismissed most of the First Amended Complaint with prejudice but allowed for a tailored amendment, is "ripped from Twitter" in both tone and content. Far from abiding by the permitted amendment, which only allowed Plaintiffs to plead actual malice as to five allegedly defamatory statements, the SAC (and the accompanying press releases and publicity campaign) is a blunderbuss attack on Defendants. Not only did Plaintiffs dedicate most of the SAC to irrelevant and *ad hominem attacks* on Lorenz, but they also added a new allegedly defamatory statement and two new causes of action. But this is not Twitter. Plaintiffs' social media positioning strategy does not work in this Court because they have failed to do the one thing the Court permitted them to do: plausibly allege actual malice as to the five remaining statements. The Complaint therefore must be dismissed on this basis alone.

The defamation claims should also be dismissed because Plaintiffs failed to make the rigorous showing necessary to plead defamation by implication. As for the new statement in suit, the prepublication correspondence establishes that statement is substantially true. Finally, Plaintiffs' new tagalong tort claims are well outside the scope of the Court's leave to amend and must be disregarded. Even if they were not, Plaintiffs cannot state their claims for intentional infliction of emotional distress ("IIED") and tortious interference with prospective economic advantage ("tortious interference") because they cannot make out even the most basic elements of those claims. Plaintiffs' SAC must be dismissed with prejudice.

## II.   FACTUAL & PROCEDURAL BACKGROUND

### A.   The Parties

Jacob is the founder of Influences, a "leading online creator management and influencer marketing company" created in 2018. SAC ¶ 12. Lorenz is an experienced technology reporter who, at the time the Article was published, covered tech culture and online creators for *The New York Times* and now reports for *The Washington Post. Id.* ¶ 19. The Times is a newspaper and media company headquartered in New York. *Id.* ¶ 8.

### B.   Plaintiffs' Contentious Relationships with Their Influencer Clients

Prior to the Article's publication, Plaintiffs, as part of their business efforts, invited young and aspiring influencers to live together in so-called "collaboration houses," including the Girls in the Valley ("GIV") house, the Kids Next Door ("KND") house, and the Drip Crib. *See id.* ¶¶ 14, 29, 44, 60. While Plaintiffs secured the homes, the influencers who stayed in these homes agreed to "create and post a certain number of contractual social media posts and pay their share of the rent." *See* Bolger Decl. Ex. 2 at 3, 4.

This arrangement did not go well. During the months preceding the Article's publication,

2

the relationship between Plaintiffs and their influencer clients was marked by constant conflict: unhappy influencers moved out of the KND house, disputes in the GIV house grew so heated that the police were called, Plaintiffs "publicly disassociated" themselves from the Drip Crib, and influencer Brittany Tomlinson filed a petition with the California Department of Industrial Relations in April 2020 alleging that Jacob owed her tens of thousands of dollars in fees and illegally operated as an unlicensed talent agency ("Tomlinson Petition"). *See* SAC ¶¶ 42, 43, 53; Bolger Decl. Exs. 1, 2 at 7-8.

### C.     The Article

On August 14, 2020, The Times published the Article, which explores the still-developing, under-regulated, and potentially profitable world of social media influencers on TikTok. *Id.* ¶ 27. In writing the Article, Lorenz relied on numerous interviews with influencers and members of the industry, Plaintiffs' contracts with influencers, state administrative proceeding filings, and information received from Plaintiffs themselves. *See* Bolger Decl. Ex. 1; *see also* SAC ¶ 42-43; 23-24. Within the context of a larger discussion about the industry, the Article quotes several influencers describing their relationships with Plaintiffs. *Id.* The Article makes a point to balance the narrative by incorporating Jacob's side of the story and quoting her lawyer, including their denials and explanations, throughout. SAC ¶¶ 23-24. As the SAC acknowledges, before publication Lorenz asked Plaintiffs more than 50 questions to permit them to give their version of events—which they did—and the Article relies on those responses to present the dispute. *See id.*

### D.     Plaintiffs' Earlier Complaints and the Court's Dismissal Order

Plaintiffs filed their original Complaint on August 12, 2021. Dkt. No. 1. After Defendants submitted a premotion letter, Dkt. No. 8, Plaintiffs served an amended complaint on November 19, 2021, which alleged one cause of action for libel *per se* and libel *per quod* based on 14

statements from the Article. Dkt. No. 28 ("FAC"). Defendants moved to dismiss the FAC on December 23, 2021. Dkt. No. 17.

On September 7, 2022, this Court granted Defendants' Motion to Dismiss in full. Dkt. No. 26 (the "Order"). In doing so, this Court first concluded that New York—not California—law applied. *Id.* at 9-12.[1] The Court dismissed with prejudice Plaintiffs' defamation claims as to the vast majority of the challenged statements, holding them to be either substantially true, protected opinion or hyperbole, not defamatory, or privileged as fair report. *See generally id.* The Court then dismissed the five remaining statements without prejudice, finding that Plaintiffs had failed to establish that Lorenz had published them with actual malice as required by New York's Anti-SLAPP Law, N.Y. Civil Rights Law § 76-a(2). *Id.* at 25.

This Court held that amending "many of the claims would be futile," because "the statements dismissed due to being true, lacking defamatory meaning, or being hyperbole or opinion cannot be saved by amendment." *Id.* at 26. Still, this Court granted Plaintiffs narrow leave to amend the complaint to "plead further information to demonstrate actual malice" solely for the portions of the five statements dismissed for lack of actual malice. *Id.* at 26-27. Therefore, the five remaining statements in suit are:

| Statement # | Quotation from Article |
|---|---|
| **Statement 3** | At the end of July, the influencers were told that they would have to cover a larger share of rent. |
| **Statement 8** | Tianna Singer, 19, moved into the Girls in the Valley house, also managed by Ms. Jacob, in late May. "She promised brand deals, money and opportunities," Ms. Singer said. "Everyone was promised income, but that never happened." |
| **Statement 9** | There was a security camera in the kitchen of the house, which Ms. Singer said was installed "without our consent" and connected to Ms. Jacob's phone. Ms. |

---

[1] This Court's prior ruling on choice of law is the law of the case. *See, e.g., Herod's Stone Design v. Mediterranean Shipping Co. S.A.*, 434 F. Supp. 3d 142, 158 (S.D.N.Y. 2020) (holding that choice of law decision was law of the case), *aff'd*, 846 F. App'x 37 (2d Cir. 2021). New York law applies to this action.

| Statement # | Quotation from Article |
|---|---|
| | Jacob said that the cameras were installed by the property owner for security purposes. |
| **Statement 12** | "Right before we parted ways she leaked my nudes and sent them to business partners, people in my house and potential investors to slander my name, saying I was unprofessional," Mr. Young said. "Ms. Jacob informed an internal consultant of the picture's existence," Ms. Jacob's lawyer wrote, and clarified that she did not "publicly" leak the photos. |
| **Statement 14** | Sarah Zeiler, 46, met Ms. Jacob in April when Ms. Jacob attempted to sign Ms. Zeiler's 16-year-old daughter, Ellie, to a management contract. Ms. Zeiler declined but soon discovered that Ms. Jacob had already added Ellie to the talent portion of an Influences marketing deck.<br><br>Ms. Zeiler emailed Ms. Jacob and asked her to remove Ellie's name and image from the deck and to stop referring to herself as Ellie's manager. "Ellie had heard from a few different notable people to be careful because Ari will tell everyone she represents you, and that's exactly what happened," Ms. Zeiler said.<br><br>Last week, Ms. Zeiler discovered that Ms. Jacob was still telling people that she had a management relationship with Ellie. "For any parent to know that someone is out there saying that they're close with your child and they represent them is uncomfortable and unsettling," she said, adding: "I didn't hire her for a reason." |

### E.    The Second Amended Complaint

On October 5, 2022, in defiance of the tailored amendment ordered by the Court, Plaintiffs filed an expansive SAC that far exceeds the amendment permitted by the Court. The SAC not only repeats allegations the Court has already dismissed, but it also improperly broadens this action. In addition to bringing a claim for defamation, it sneaks in a new "in the alternative" defamation by implication" claim, purports to identify a new allegedly defamatory statement in suit (the "New Statement") and presents two new, redundant tort claims for tortious interference with prospective economic advantage and IIED.

In response, Defendants submitted a premotion letter, Dkt. No. 33, and this Court held a premotion conference on December 20, 2022, Dkt. No. 40. This motion to dismiss follows.

III.    **ARGUMENT**

This Court should dismiss Plaintiffs' SAC with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, because, despite its bombast, the amendment does not fix the FAC's legal shortcomings—namely, plausibly alleging actual malice for the five remaining statements.

**A.    This Defamation Case Must Be Dismissed**

On a motion to dismiss, a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[2] "In order to avoid dismissal under Rule 12(b)(6) . . . a plaintiff must state the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Biro v. Conde Nast,* 963 F. Supp. 2d 255, 265 (S.D.N.Y. 2013) (internal quotation marks omitted).[3]

Because Plaintiffs fail for a third time to adequately plead their claims, this lawsuit must be dismissed with prejudice.

---

[2] As this Court has already held, since Plaintiffs' allegations rely heavily on the Article, the Plaintiffs' prepublication responses to Lorenz and their prepublication emails, these documents are incorporated by reference into their complaint. Order at 8.

[3] This lawsuit unquestionably implicates Defendants' First Amendment right to report the news, and thus, the Court must "consider this case against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). For that reason, courts in the Southern District have recognized that "[b]ecause a defamation suit may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself, courts should, where possible, resolve defamation actions at the pleading stage." *Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, 551 F. Supp. 3d 320, 325-26 (S.D.N.Y. 2021) (quoting *Adelson v. Harris*, 973 F. Supp. 2d 467, 481 (S.D.N.Y. 2013)).

### B.      On Their Third Chance, Plaintiffs Still Fall Short of Pleading Defamation.

The SAC must be dismissed as to **Statements 3, 8, 9, 12,** and **14** because Plaintiffs have still failed to do the one thing they were permitted to do: plead actual malice as required by New York's Anti-SLAPP Law. *See* Order at 27.

The Second Circuit has affirmed that to allege actual malice, a plaintiff must plead "plausible grounds to infer actual malice by alleging enough facts to raise a reasonable expectation that discovery will reveal evidence of actual malice." *Biro*, 963 F. Supp. 2d at 546 (cleaned up). Actual malice requires "clear and convincing evidence that the defendant realized that his statement was false or that he subjectively entertained serious doubt as to the truth of his statement." *Bose Corp. v. Consumers Union of U.S.*, 466 U.S. 485, 511, n. 30 (1984). Allegations that are "pure speculation" and are "supported not by facts but by only conclusory statements" cannot prove actual malice. *McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 185 (S.D.N.Y. 2020). As set forth below, Plaintiffs have failed to satisfy that standard here.

### 1.      Plaintiffs' Amended Allegations Fail to Plead Actual Malice as to Statements 3, 8, 9, 12, and 14.

***First***, as to **Statements 8** and **12**, Plaintiffs add new allegations that Lorenz could have confirmed **Statement 8**'s falsity by "reviewing the social media accounts of the influencers Plaintiffs managed," SAC ¶ 45, or "should and could" have substantiated **Statement 12** by confirming when Devion Young's nudes were leaked or that "Influences had no business partners," *id.* ¶ 58. But actual malice is "not measured by whether a reasonably prudent man would have published, or would have investigated before publishing." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Instead, "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his [statements]," *id*, or had a "high degree of awareness of their probable falsity," *Garrison v. Louisiana,* 379 U.S. 64, 74 (1964).

Accordingly, these allegations about what Lorenz could have or should have known are insufficient to establish malice. Rather, what matters is what Lorenz did know. *St. Amant,* 390 U.S. at 731-32; *Gross v. N.Y. Times Co.*, 281 A.D.2d 299, 299 (1st Dep't 2001).

This Court rejected as insufficient similar allegations in *BYD Co. Ltd. v. VICE Media LLC*. There, plaintiff attempted to plead actual malice by alleging that had defendant investigated its source's reputation on Wikipedia, VICE "would have been put on notice" that the source "ha[d] been criticized in the past for alleged bias." 531 F. Supp. 3d 810, 826–27 (S.D.N.Y. 2021) (subsequent case history omitted). The court rejected this argument, deeming the mere fact of information existing online insufficient to allege actual malice absent an allegation that VICE actually knew that information existed. *Id*. Just as in *BYD Co. Ltd.*, Plaintiffs have pled the existence of information but no facts suggesting that Lorenz knew that information.[4] Here, as there, those allegations are insufficient. Indeed, these allegations are even more attenuated—Plaintiffs argument would leave Defendants liable for every needle they did not find in a haystack. The actual malice standard does not require that level of investigation.

*Second*, Plaintiffs try to plead actual malice as to **Statements 9, 12,** and **14** by alleging that their communications with third parties—not Lorenz—established that the influencers had consented to the security camera in the GIV house (**Statement 9**), that Jacob did not leak Young's nude photos (**Statement 12**), and that Plaintiffs did not misrepresent their relationship with Ellie

---

[4] A failure to fact check cannot indicate actual malice. *Kipper v. NYP Holdings Co.*, 12 N.Y.3d 348, 355 (2009) (alleged failure to employ fact-checkers was "mere negligence" at most). For this reason, Plaintiffs' claim that Lorenz published the New Statement with actual malice because "Lorenz or fact-checkers from *The Times*" should have "fact-check[ed]" that statement against the California Public Utilities Commission's website for a press release about its COVID-19 era policy, SAC ¶¶ 55-56, cannot demonstrate actual malice, especially where, as set forth *infra*, Plaintiffs' prepublication correspondence admitted, in no uncertain terms, the New Statement's truth.

Zeiler (**Statement 14**). But as this Court noted, to allege actual malice, Plaintiffs must "bring home" their allegations to Lorenz. Order at 22 (quoting *Sullivan*, 376 U.S. at 287); *see also Church of Scientology Int'l v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001) (actual malice measures "the speaker's subjective doubts about the truth of the publication."). Consequently, actual malice cannot be pled without "specific facts bearing on" a speaker's knowledge. *Prince v. Intercept*, No. 21-CV-10075(LAP), 2022 WL 5243417, at *17 (S.D.N.Y. Oct. 6, 2022); *see also Brimelow v. New York Times Co.*, No. 21-66-CV, 2021 WL 4901969, at *2 (2d Cir. Oct. 21, 2021) (statement by plaintiff to third party did not demonstrate actual malice where plaintiff did "not show that the Times was or should have been aware of that statement and purposefully avoided it."). Here, Plaintiffs did not and cannot plead that Lorenz saw or even knew about those communications.

Accordingly, allegations that an iPad in the GIV house required entrants to consent to video surveillance, that such practice is common industry-wide, that a Times photographer purportedly asked to sign-in by iPad, and that the "evidence of videotaping was visually apparent" cannot show that Lorenz published **Statement 9** with actual malice, because these allegations are not homed to Lorenz and include no "specific facts bearing on" her knowledge. *See* SAC ¶¶ 47-49; *Prince*, 2022 WL 5243417, at *17.[5] Similarly, Plaintiffs' cannot establish actual malice for **Statements 12** and **14** by pointing at text messages between Jacob and two other people about Young's nude photos, SAC ¶¶ 59, 62, or text messages between Jacob and Zeiler's mother and an email between Jacob and other third parties addressing Zeiler's involvement with Influences, *id.* ¶¶ 65, 67, 69, because Plaintiffs do not and cannot allege Lorenz knew about these materials prior to publication.[6]

---

[5] These allegations are also insufficient to show actual malice for Statement 9 because even if the videotaping was "visually apparent," that fact only speaks to notice and does not establish that the influencers consented to installation. Notice, of course, is not the same as consent.

[6] Moreover, vaguely alleging that Lorenz "by virtue of [her] deep knowledge of the industry" should have somehow intuited that all guests and residents were required to sign a waiver

In this way, this case resembles *Lindberg v. Dow Jones & Co., Inc.*, No. 20-CV-8231 (LAK), 2021 WL 5450617 (S.D.N.Y. Nov. 22, 2021). There, a plaintiff proffered an array of allegations regarding his insurers that he claimed demonstrated the falsity of statements published in a *Wall Street Journal* article. *Id.* at *4. Critically, plaintiff failed to allege that the *Journal*'s *reporters* knew any of this information. *Id.* at *4-5. The Court found that even if Plaintiff's facts could show falsity, they still could not establish actual malice, since they did not reveal that the reporters "entertained serious doubts" about their reporting. *Id.* at *5-6. Here too, Plaintiffs direct their allegations exclusively towards knowledge possessed by third parties—not Lorenz. These allegations therefore, cannot prove that she published **Statements 9, 12,** and **14** with actual malice.

***Third,*** Plaintiffs allege that certain texts between Jacob and Lorenz establish that Lorenz knew that **Statements 8** and **14** were false. This argument fails because Plaintiffs have misrepresented the content of those messages. *See* SAC ¶¶ 45, 68. For example, Plaintiffs allege that Lorenz should have been aware that **Statement 8** was false because Jacob had informed Lorenz of "one especially big opportunity" called Playlist Live, an influencer convention that was allegedly "sponsored through a brand deal" and in which "dozens of influencers (and Singer)" were set to participate. *Id.* ¶ 45. These text messages, however, reveal no such thing. Rather, the screenshot merely shows that Jacob texted Lorenz a hyperlink to a Google Doc titled "accommodations – Playlist Orlando – Matt x Influences" with no reference to any purported sponsorship of the trip or that any influencers, including Singer, would be in attendance. *Id.* And even if Lorenz had been aware of the nature of this trip, one influencer convention in Orlando does

---

consenting to video surveillance, *see* SAC ¶ 49, is simply not a real "obvious reason" for Lorenz to have doubted Statement 9. *See Kerik v. Tacopina*, 64 F. Supp. 3d 542, 573 (S.D.N.Y. 2014). And although Plaintiffs allege that Defendants were "made aware" of the iPad agreement in the prepublication correspondence, the prepublication correspondence, which makes no mention of this waiver, refutes this contention. *See generally* Bolger Decl., Exs. 2 & 3.

not demonstrate that Lorenz knew that Influences had secured actual brand deals and business opportunities for its clients.[7]

For **Statement 14**, Plaintiffs claim that Jacob's text messages with Lorenz reveal that "Lorenz knew that Jacob was being transparent about Plaintiffs' relationship with Ellie Zeiler." SAC ¶ 69. Not so. Far from "transparently" informing Lorenz that Zeiler's mother had declined to retain Influences to manage her daughter and asked that her daughter be removed from the marketing deck, Jacob's text presented Zeiler's withdrawal from the GIV house as a "pause" because "of the coronavirus restrictions." *Id.* ¶ 67. Indeed, the texts affirm, rather than undercut, Statement 14's substantial truth, because they highlight the seemingly continuing relationship between Zeiler and Influences by informing Lorenz that "Zeiler's mom is an advisor for me on PR." *Id.* ¶ 68. At no point does Jacob forthrightly admit that she is no longer working with Zeiler or that she removed Zeiler from the marketing deck in deference to her mother's wishes.

*Fourth,* Plaintiffs misunderstand the difference between malice and actual malice when they claim that Lorenz manifested a "malicious desire to harm" Jacob by "doxing" her via a hyperlink in the Article to a Zillow listing for the KND mansion, where Jacob alleges she was then living. SAC ¶¶ 82-83. Despite the made-for-Twitter nature of this accusation, the "actual malice standard is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 666 (1989); *see also Lindberg*, 2021 WL 5450617, at *6 (no actual malice based on conclusory allegations that reporters were "out to get" plaintiff). Thus, even accepting as true that Lorenz was possessed by a "malicious desire to harm" Jacob, that still would not show that the statements remaining in suit

---

[7] The only other concrete example of a business "opportunity" Plaintiffs point to is the GIV house's opening party. SAC ¶ 46. Plaintiffs do not explain what about this party renders it a business opportunity such that Lorenz should have been aware that Statement 8 was false.

were published with actual malice. But this allegation also fails because, tellingly, the messages do not support the doxing claim: nowhere in the prepublication correspondence, including text messages now featured in the SAC, does Jacob inform Lorenz that she is residing alone in the KND mansion. *See generally* Bolger Decl. Exs. 2 & 3; SAC ¶ 82. The doxing allegations are, therefore, not only irrelevant but patently untrue.

For the same reason, Plaintiffs' claim that on several occasions—including ones unrelated to this Article—Lorenz reached out to potential sources to "press them for negative information about Jacob and Influences," SAC ¶¶ 75, 79, and that Lorenz applied a "pressure campaign to members of the KND house, to get them to reveal 'dirt' on Jacob," *id.* ¶ 78, cannot show actual malice. Assertions that a reporter was engaged in a "systemic campaign" of defamation or that she "'harassed' sources to tell [her] the 'right' information" are allegations of common law malice, not actual malice. *Lindberg*, 2021 WL 5450617, at *6. As the *Lindberg* court put it, allegations that a journalist is "out to get" a plaintiff cannot, standing alone, constitute actual malice. *Id.*

**Finally,** to the extent that Plaintiffs argue that the SAC's many and irrelevant disparaging allegations about Lorenz—including attacking Lorenz's reporting on unrelated articles, lambasting her career path, and accusing her of not "operat[ing] within the  boundaries of journalistic norms," *id.* ¶¶ 84-87—are an attempt to allege actual malice, they fail as a matter of law.  Lorenz's reporting for other articles is facially immaterial to Lorenz's state of mind about *this* Article's publication. *See Chaiken v. VV Pub. Corp.*, No. 91 CIV 2102 (LAP), 1994 WL 876418, at *1 (S.D.N.Y. Mar. 25, 1994) (actual malice focuses on "the defendant's state of mind at the time of publication"). In addition to not "bringing home" actual malice to Lorenz for this Article, impugning Lorenz as a habitually unprofessional reporter still cannot show actual malice, because even an "extreme

departure from professional standards" does not suffice. *Harte-Hanks Commc'ns, Inc.*, 491 U.S. at 665. These new allegations do not satisfy Plaintiffs' burden of establishing actual malice.

> **2.    Plaintiffs' Recycled and Already-Rejected Allegations Cannot Establish Actual Malice.**

The SAC also rehashes a number of actual malice allegations that this Court has already rejected—separately and together—as legitimate grounds to plead actual malice. These allegations are no more availing now for **Statements 3, 8, 9, 12,** and **14** than they were in the FAC and must, once again, be rejected.

**Time to Respond to Questions.** Echoing the FAC, the SAC complains that Lorenz put Jacob through a "last minute fire drill" to answer questions for the Article. *See* SAC ¶¶ 23-24. This Court, however, has held that far from demonstrating actual malice, "Lorenz's behavior in reaching out to plaintiffs prior to publication evinces appropriate regard for the truthfulness of the publication, even if that outreach was conducted only shortly before publication." Order at 25; *see also Contemporary Mission, Inc. v. N.Y. Times*, 665 F. Supp. 248, 270 (S.D.N.Y. 1987) ("Publication in the face of a denial by plaintiffs of a statement's truth does not demonstrate actual malice.").

**Preconceived Narrative.** Plaintiffs then recycle allegations that Lorenz's reporting followed a "preconceived narrative," which was designed to paint Plaintiffs in a negative light. *See* SAC ¶¶ 38 (regarding **Statement 3**), 41, 43, 56, 79-81. Once again, the Court has already rejected these allegations as a viable basis for actual malice as a matter of law. Order at 24-24; *see also McDougal*, 489 F. Supp. 3d at 186 (speculative allegations of a "pre-determined narrative" cannot establish actual malice). In fact, the Court rejected some of the very facts Plaintiffs now seek to offer as evidence of actual malice. For example, this Court held that nothing in the Article's reporting on Gary Vaynerchuk's relationship with Influences "implies that Jacob lied about the

13

fact of Vaynerchuk mentoring her." Order at 19 (dismissing Statement 5 with prejudice). Nonetheless, Plaintiffs now allege that this very same reporting demonstrates a "preconceived narrative that Plaintiffs were dishonest." SAC ¶ 41. Similarly, this Court held that the Article's reporting on the Tomlinson Petition is "substantially true" and does not "imply that plaintiffs withheld payments" from Tomlinson. Order at 15. Yet, Plaintiffs now contend that Defendants' reporting on that labor complaint showed Lorenz's "commitment to a preconceived narrative of Jacob as an unscrupulous business person." SAC ¶ 43. In short, this Court has already rejected the very allegations of a "preconceived narrative" on which Plaintiffs rely.

**Denials.** Plaintiffs claim that **Statement 3** was published with actual malice, in part, because "Plaintiffs corrected Defendants on this point on three separate occasions, pre-publication." *Id.* ¶ 38. But this Court has already decided that "None of plaintiffs' allegations regarding the manner or method of verifying statements with the plaintiffs amount to an allegation of actual malice." Order at 23; *see also Contemp. Mission,*, 665 F. Supp. at 270 ("Publication in the face of a denial by plaintiffs of a statement's truth does not demonstrate actual malice."). This allegation must fail again.

**Refusal of Off-the-Record Evidence.** Plaintiffs proceed to repeat virtually verbatim the FAC's conclusory allegations concerning Lorenz's refusal to accept their off-the-record evidence. *Compare* SAC ¶¶ 25-26 *with* FAC ¶ 25. Yet, as this Court has already held, this too is not enough. Order at 24 (finding only conclusory allegations in FAC that refusing off-the-record documents was a departure from journalistic standards); *see also Loeb v. New Times Comms. Corp.*, 497 F. Supp. 85, 93 (S.D.N.Y. 1980) ("[F]ailure to verify statements with the plaintiff" before publication "do[es] not amount to [actual malice].").

14

**Lorenz's Alleged Personal Motivation.** Last, Plaintiffs reiterate at length that Lorenz was "personally motivated to destroy Plaintiffs' reputation" because Lorenz was represented by rival United Talent Agency in a book deal and because she allegedly aspires to be an "influencer journalist." *See* SAC ¶¶ 20; 87-98. These regurgitated allegations cannot surmount this Court's unequivocal holding in response to virtually identical allegations from the FAC that "allegations of improper motives in publishing do not on their own establish actual malice." Order at 25 (citing *Harte-Hanks*, 491 U.S. at 665).

### 3.    Even Added Together, Plaintiffs' Allegations Do Not Amount To Actual Malice.

Even if this Court took these allegations together, this Court should hold, as it did in the Order, that Plaintiffs still cannot allege actual malice. Order at 25. In other words, what Plaintiffs' actual malice allegations cannot do separately, they also cannot do when lumped together.

In fact, the Second Circuit affirmed dismissal of a defamation case based on similar allegations. In *Brimelow v. New York Times Co*., the plaintiff alleged that The Times acted with actual malice based on a litany of factors almost identical to those invoked here, including that The Times allegedly ignored plaintiff's "repeated" denials, did not rely on statements plaintiff had made to third parties, departed from accepted newsgathering standards, acted with ill-will or a pre-conceived narrative, failed to investigate, and failed to act impartially. *Brimelow*, 2021 WL 4901969, at *2-3. The *Brimelow* court considered all of these factors in conjunction and concluded that they still did not add up to actual malice, ultimately holding that there was "no combination of allegations from which one could plausibly infer that *[T]he Times* was purposely avoiding the truth in its reporting." *Id.* at *3. Here, as in *Brimelow*, Plaintiffs' "combination of allegations" do not amount to actual malice, because they do not speak to Lorenz's subjective awareness of the probable falsity of the Article. Put simply, their alleged facts cannot create a plausible inference

about what Lorenz actually knew or believed at the time the Article was published. Instead, Plaintiffs point to facts they *think* Lorenz should have known or believed. Alone or together, these allegations are insufficient to allege actual malice and this Court should dismiss with prejudice Plaintiffs' defamation claim in its entirety for failure to plead actual malice.

### 4.     Plaintiffs Again Fail to Make the "Rigorous Showing" Necessary to Allege Defamation by Implication.

Plaintiffs also fail in their half-hearted attempt to plead defamation by implication as to all statements in the alternative for the additional reason that Plaintiffs have not made the required "especially rigorous showing" that "(1) the language may be reasonably read to impart the false innuendo, and (2) the author intends or endorses the inference." *See Biro v. Conde Nast*, 883 F. Supp. 2d 441, 466 (S.D.N.Y. 2012); *Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 37 (1st Dep't 2014) (same). Not only do Plaintiffs not make this showing, but their alleged implications are, in any event, nonactionable opinion.

As an initial matter, the SAC, like its predecessor, offers only conclusory allegations that the "Article as a whole" "may reasonably be read" to impart that "Plaintiffs intentionally take advantage of their clients, abuse young talent for their own financial gain, lie about and breach the terms of their contracts, and generally commit unethical and fraudulent business practices." SAC ¶ 105. These barebones allegations are a far cry from the "rigorous showing" required to plead defamation by implication. Nor could Plaintiffs reasonably offer more. A holistic review of the Article refutes the very implications Plaintiffs try to impute. The Article reports on two sides of a heated dispute. This balanced narrative is emphasized by the Article's careful inclusion of Plaintiffs' successes as a manager as well as their denials and explanations of the newsworthy allegations by her former clients. *See generally* Bolger Decl. Ex. 1. Such conscientious balancing suggests "[o]n its face, neither a positive nor negative inference…instead it is equally suggestive

of both." *Wilson v. New York*, No. 15-CV-23 (CBA) (VMS), 2018 WL 1466770, at *5 (E.D.N.Y. Mar. 26, 2018) (dismissing defamation by implication claim); *see also Croce v. New York Times Co.*, 930 F.3d 787, 795 (6th Cir. 2019) (where investigative article recounted allegations against individual and was not entirely unfavorable, "[a] reasonable reader would therefore interpret the article as presenting two sides of this controversy."). The Article, therefore, simply does not bear the implication Plaintiffs ascribe to it.

Furthermore, Plaintiffs have not adequately alleged, as they must, that Defendants intended or endorsed the allegedly defamatory implication. Whether a defendant intended or endorsed a defamatory implication is an "objective inquiry" based on whether the Article itself "by the particular manner or language in which the true facts are conveyed, supplies additional, affirmative evidence suggesting that the defendant intends or endorses the defamatory inference." *Partridge v. State*, 173 A.D.3d 86, 94 (3d Dep't 2019); *see also Woods v. Evansville Press Co., Inc.,* 791 F.2d 480, 487 (7th Cir. 1986) (rejecting defamation by implication claim where "there is no evidence that the defendants … shared the Plaintiff's interpretation of the [publication] or intended that [it] be read to contain the defamatory innuendoes the plaintiff attributes to it"). In other words, the focus is not on "the mind's eye of the declarant" but on the "very substance and 'context of the [communication] as a whole." *Partridge,* 173 A.D. at 95 (quoting *Biro*, 883 F. Supp. 2d at 466). Thus, "even if the proof indicates that the declarant's actual subjective intent is to endorse the negative innuendo, said intent is irrelevant unless the context of the actual communication manifests this intent." *Id.*

Here, nothing about the Article's manner or language evinces that Defendants intended or endorsed any of the defamatory implications. *See* SAC ¶ 106. The Article is a balanced account of two sides of a dispute, which carefully includes Plaintiffs' explanations and denials. These

explanation and denials preclude the very defamatory implication Plaintiffs ascribe to the Article. *See Henry v. Fox News Network LLC*, No. 21-CV-7299 (RA), 2022 WL 4356730, at \*9 (S.D.N.Y. Sept. 20, 2022) (holding that phrasing used in reporting and the purposeful inclusion of certain facts were "calculated to prevent" the defamatory inferences). This claim must be dismissed.

Even if the Article implied, as Plaintiffs allege that Plaintiffs "commit unethical and fraudulent business practices," SAC ¶ 105, that implication is non-actionable opinion. In fact, New York courts (including this one) have repeatedly found similar allegations to be constitutionally protected opinion. *See Biro*, 883 F. Supp. 2d at 469; *see also* Order at 21 ("Hypothetical comments regarding taking advantage of vulnerable young people are not actionable"); *Oakley v. Dolan*, No. 17-CV-6903 (RJS), 2020 WL 818920, at \*8 (S.D.N.Y. Feb. 19, 2020) (subsequent case history omitted) (describing conduct as "abusive" was nonactionable opinion); *Edwards v. Nat'l Audubon Soc., Inc.*, 556 F.2d 113, 121 (2d Cir. 1977) (dubbing plaintiff a "liar" "merely expressed" opinion); *Small Bus. Bodyguard Inc. v. House of Moxie*, 230 F. Supp. 3d 290, 315 (S.D.N.Y. 2017) (calling someone "unethical, unscrupulous" is "constitutionally protected statement of opinion"); *Sabratek Corp. v. Keyser*, No. 99 CIV. 8589 (HB), 2000 WL 423529, at \*6 (S.D.N.Y. Apr. 19, 2000) (description of individual as "a fraud" was "hyperbole and opinion"). For all these reasons, Plaintiffs' defamation by implication claim fails.

### 4.      The New Statement Is Substantially True.

Next, if this Court considers Plaintiffs' defamation claim as based on the New Statement, it should be dismissed for the additional reason that its substantial truth is established by Plaintiffs' prepublication correspondence and amended pleadings.

Falsity is the *sine qua non* of a defamation action. *Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995). To plead defamation, Plaintiffs must allege "facts that, if proven, would establish that the

Defendants' statements were not substantially true." *Tannerite Sports, LLC v. NBCUniversal New Grp., a division of NBCUniversal Media, LLC*, 864 F.3d 236, 247 (2d Cir. 2017). "[A] statement is substantially true if the statement would not have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Id.* at 242. Importantly, where documents contradict a pleading, "the documents control and this Court need not accept as true the [Plaintiffs'] allegations." *Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000)

> Here Plaintiffs allege that the following statement from the Article is false:

> "Ari told me all utilities are paid for," Ms. Marie said. "But in April the water, Wi-Fi and electricity went off. We were using water from the pool to flush the toilets." Ms. Jacob said that she had agreed to pay for utilities "up to a certain point," and that she "was under no obligation to pay the bills."

SAC ¶ 55; Bolger Decl., Ex. 1. Plaintiffs claim this New Statement is false because the "utilities never went off for any reason in April, let alone due to bills being unpaid." SAC ¶ 55. But *Plaintiffs' own prepublication correspondence* bluntly belies this allegation. When Lorenz asked Plaintiffs whether "water, Wi-Fi, and electricity were all temporarily shut off" at the GIV house, Plaintiffs did not mention any of the COVID-19 restrictions on which Plaintiffs rely in the SAC, but instead, confirmed that "[t]his is factually true (the water, wifi, and electricity were turned off)." Bolger Decl. Ex. 2 at 8. Plaintiffs also said, "Ms. Jacob had spent money paying…up to a certain point, utilities," *id.* at 7, but that she "was under no obligation to pay the bills," *id.* at 8. The prepublication correspondence establishes that the New Statement is substantially true.

### C.    The New Claims Should Be Rejected.

In addition, the defamation claim arising out of the New Statement and the tortious interference and IIED claims must be dismissed as beyond the scope of the tailored amendment permitted by the Court's Order, which explicitly directed Plaintiffs to amend *only to* add allegations showing that Statements 3, 8, 9, 12, and 14 were published with actual malice.

"District courts in this Circuit have routinely dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted." *Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012) (summary order); *see also Mitchell v. Am. Arb. Ass'n*, No. 17-CV-8566 (PAE), 2018 WL 10419732, at *3 (S.D.N.Y. May 17, 2018) ("This Court is authorized to disregard claims that go beyond the scope of the amendment permitted in its December Order."); *Desouza v. Off. of Child. & Fam. Servs.*, No. 18CV2463PKCSMG, 2019 WL 2477796, at *6 (E.D.N.Y. June 12, 2019) (striking allegations going beyond scope of permitted leave to amend); *Rahman v. Fischer*, No. 08 Civ. 4368(DLC), 2010 WL 1063835, at *2 n.5 (S.D.N.Y. Mar. 22, 2010); *Pagan v. N.Y. State Div. of Parole*, No. 98 Civ. 5840 (FM), 2002 WL 398682, at *3 (S.D.N.Y. Mar. 13, 2002).

Plaintiffs' amendments far exceed the scope of permission granted. First, Plaintiffs improperly try to reopen decided questions by adding a slew of facts pertaining to seven statements this Court unequivocally dismissed with prejudice.[8] Similarly, Plaintiffs seek to recontest choice-of law, SAC ¶ 10, even though this Court has already held that New York law applies to this lawsuit. Order at 11. Plaintiffs also make allegations about Lorenz's relationship with United Talent Agency—which this Court has already rejected as a basis for actual malice. *See* SAC ¶¶ 88-98. And Plaintiffs abuse the leave granted by littering the SAC with *ad hominem* invective against Lorenz, including maligning Lorenz with allegations entirely unrelated to her reporting on the Article, *id.* ¶¶ 74-77, inserting irrelevant attacks on Lorenz's reporting in *another* article, *id.* ¶

---

[8] *See* SAC ¶ 29-36 (regarding dismissed Statement 1); *id.* ¶ 37 (regarding dismissed Statement 2); *id.* ¶¶ 39; 42-43 (regarding dismissed Statement 4); *id.* ¶¶ 40-41 (regarding dismissed Statement 5); *id.* ¶¶ 42-43 (regarding dismissed Statement 6); *id.* ¶¶ 50-52 (regarding dismissed Statement 10); *id.* ¶¶ 53-54 (regarding dismissed Statement 11).

84, trafficking in groundless (and again, irrelevant) speculation as to why Lorenz left The Times, *id.* ¶ 86, and assailing the course of Lorenz's career, *id.* Most egregiously, Plaintiffs try to improperly expand this case by seeking recovery for an additional allegedly defamatory statement, *id.* ¶¶ 24; 100(f), and by asserting two new and meritless tort claims for tortious interference and IIED, *id.* ¶¶ 108-17.

Critically, as Plaintiffs are well-aware, not one of these new allegations or claims are pertinent to whether Lorenz acted with actual malice when **Statements 3, 8, 9, 12,** and **14** were published, the *sole* issue for which Plaintiffs were allowed to amend. For this reason alone, the new tort claims and defamation claim based on the New Statement must be dismissed with prejudice.

### D.   Plaintiffs' Belated Tort Claims Must Be Dismissed.

Plaintiffs tagalong claims must also be dismissed not only because they are outside the bounds of the permitted amendment, but because they are redundant to Plaintiffs' defamation claims and because Plaintiffs have failed to plead each claim on its merits.

#### 1.   Plaintiffs' Tagalong Tort Claims Must Be Dismissed as Duplicative of Their Defamation Claim.

This Court must dismiss Plaintiffs' IIED and tortious interference claims as duplicative of their defamation claim. "New York law considers claims sounding in tort to be defamation claims . . . where those causes of action seek damages only for injury to reputation, [or] where the entire injury complained of by plaintiff flows from the effect on his reputation." *Hengjun Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012) (dismissing redundant tort claims because they "flow[ed] from the effect on [plaintiff's] reputation" caused by allegedly defamatory statements); *see also Anyanwu v. Columbia Broad. Sys., Inc.*, 887 F. Supp. 690, 693–94 (S.D.N.Y. 1995) ("When additional tort claims are aimed at controlling the same speech that is the basis of a libel

claim, courts should not entertain the additional claims under less stringent standards."). Accordingly, where a plaintiff tries to dress up a defamation claim as an IIED[9] or tortious interference[10] cause of action to avoid the stringent pleading standard of a libel claim, New York courts dismiss such tagalong claims as duplicative as a matter of course.

      Plaintiffs make no bones about the fact that both tort claims are grounded in defamation. For their tortious interference claim, they allege that Defendants sabotaged them by "defaming Plaintiffs under the guise of interviewing influencers for their story" and then by "publishing the false and defamatory Article." SAC ¶ 110. Plaintiffs likewise base their IIED claim on allegations that Defendants "fabricat[ed] a false narrative about Jacob" and then "propagate[d] this false and defamatory narrative to the world." *Id.* ¶ 115. Because both tort claims are explicitly premised on defamation, they fail.

---

[9] *See Levin v. McPhee*, 917 F. Supp. 230, 242-43 (S.D.N.Y. 1996) (emotional distress claim dismissed as duplicative of libel claim) (applying New York law), *aff'd*, 119 F.3d 189 (2d. Cir. 1997); *Franco v. Diaz*, 51 F. Supp. 3d 235, 244 (E.D.N.Y. 2014) ("an IIED claim should be dismissed when it falls 'within the ambit' of another tort, such as defamation"); *Brancaleone v. Mesagna*, 290 A.D.2d 467, 468-69, (2d Dep't 2002) (dismissing intentional infliction of emotional distress claim as duplicative, holding that the "plaintiff may properly recover for the alleged emotional distress caused by the defamatory statements under the cause of action for defamation"); *Anyanwu v. Columbia Broad. Sys.*, 887 F. Supp. 690, 693 (S.D.N.Y. 1995) (emotional distress claims that are "essentially defamation claims should not be entertained") (applying New York law).

[10] *See, e.g.*, *Chao v. Mt. Sinai Hospital*, 476 F. App'x 892, 895 (2d Cir. 2012) (affirming dismissal of tortious interference with business relations claim because factual allegations underlying the claim were "virtually identical" to the facts underlying defamation claim); *Restis v. Am. Coalition Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 726 (S.D.N.Y. 2014) (holding that the plaintiff's tortious interference with economic advantage claim was foreclosed because "the entire injury pleaded…flows from the effect of the defamatory comments on Plaintiffs' reputation"); *Wexler v. Allegion (UK) Ltd.*, No. 16-cv-2252, 2018 WL 1626346, at *8 (S.D.N.Y. Mar. 30, 2018) (holding tortious interference claim was duplicative of defamation, because alleged damages flowed from harm to plaintiff's reputation).

## 2.        Jacob Fails to State Her IIED Claim.

Even if Jacob's IIED claim were not duplicative of her defamation claim (and it clearly is), it would still fail, because it is barred by the First Amendment and because the publication of an article does not constitute "extreme and outrageous" conduct.

The U.S. Supreme Court has made clear that the First Amendment serves as a defense against tort suits "including suits for intentional infliction of emotional distress," which are based on speech that addresses a "matter of public concern." *See Snyder v. Phelps*, 562 U.S. 443, 451-53 (2011). The U.S. Supreme Court has broadly defined such speech to be "fairly considered as relating to any matter of political, social, or other concern to the community," or "is a subject of general interest and of value and concern to the public." *Id.* at 453 (internal quotation marks omitted). And here, the Article's reporting about prominent participants in a burgeoning "multi-billion-dollar" segment of the entertainment industry, which "has never been bigger, more profitable, and more omnipresent and [] continues to grow," SAC ¶¶ 12, 16, and which relies on the labor of young people, including teenagers and minors, *e.g., id.* ¶ 64, is absolutely on a matter of public concern. The First Amendment, therefore, bars Jacob's IIED claim.

Further, Plaintiffs are public figures because they injected themselves into the ongoing controversy regarding "collab houses" and because the SAC cements Jacob as a limited purpose public figure for the social media world, stating that she is the CEO of a "leading online creator management and influencer marketing company," a "pioneer" in the "multi-billion-dollar influencer industry." FAC ¶¶ 12-13; *Yiamouyiannis v. Consumers Union of U. S., Inc.*, 619 F.2d 932, 939 (2d Cir. 1980). They, therefore, cannot assert a claim for IIED without pleading and proving actual malice. *See Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56 (1988). For the reasons discussed *supra*, Plaintiffs have not done so.

Finally, "the tort of intentional infliction of emotional distress predicates liability on the basis of extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society." *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 135-36 (1985).[11] But the "publication of a single, purportedly false or defamatory article regarding a person does not constitute extreme and outrageous conduct *as a matter of law*." *Bement v. N.Y.P. Holdings, Inc.*, 307 A.D.2d 86, 92 (1st Dep't 2003) (emphasis added); *see also Cassini v. Advance Publications, Inc.*, 41 Misc. 3d 1202(A), at *3-4 (Sup. Ct. N.Y. Cty. 2013), *aff'd,* 125 A.D.3d 467 (1st Dep't 2015) (same). Because Jacob has expressly bound up her IIED claim in the Article's publication—conduct which is simply not "extreme or outrageous"—her claim falls.

### 3. Plaintiffs' Tortious Interference with Prospective Economic Advantage Claim Must Be Dismissed.

Lastly, Plaintiffs fail to plausibly state a claim for tortious interference with prospective economic advantage, which requires a plaintiff to plead that "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *Just Play, LLC v. A.S. Plastic Toys Co.*, No. 19 CIV. 9399 (ER), 2022 WL 580876, at *4 (S.D.N.Y. Feb. 25, 2022) (internal quotation marks omitted).

Plaintiffs' tortious interference claim fails because the SAC did not and cannot allege, as it must, that Defendants' sole purpose in publishing the Article was to harm Plaintiffs. *See Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 189 (2004). Where, as here, the Defendants have a First Amendment interest in free speech, Plaintiffs cannot establish that the sole motive in publishing

---

[11] Alleging IIED also requires showing "(ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Y.D. v. New York City Dep't of Educ.*, No. 14CV1137-LTS, 2016 WL 698139, at *8 (S.D.N.Y. Feb. 19, 2016). Jacob has not pled these elements either.

was to harm Plaintiffs. Indeed, even in tortious interference with contract cases, which do not include a "wrongful purpose" requirement, where the alleged interference was "merely incidental to defendants' exercise of their constitutional right to [report] newsworthy information," defendants are deemed to be acting with a "legitimate" purpose and cannot be held liable for tortious interference. *Huggins v. Nat'l Broad. Co.*, No. 119272/95, 1996 WL 763337, at *4 (Sup. Ct. N.Y. Cty. Feb. 7, 1996) (finding "[a]ny interference that occurred was merely incidental to defendants' exercise of their constitutional right to broadcast newsworthy information . . . [and therefore] Defendants' purpose was a legitimate one and did not involve an intent to unjustifiably interfere with the confidentiality agreement."); *see also Highland Capital v. Dow Jones*, 178 A.D.3d 572, 574  (1st Dep't 2019) (citing *Bartnicki v Vopper*, 532 U.S. 514, 534 (2001) ("The tortious interference with contractual relations claim was properly dismissed. Defendants' conduct as alleged in the complaint was incidental to the lawful and constitutionally protected process of news gathering and reporting"). Defendants did not write the Article for the sole purpose of interfering with Plaintiffs' business relationships.  For this reason, the claim should be dismissed.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiffs' Second Amended Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

Dated: January 20, 2022

*/s/ Katherine M. Bolger*
Katherine M. Bolger
Nimra H. Azmi
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Phone:      (212) 489-8230
Fax:         (212) 489-8340
katebolger@dwt.com
nimraazmi@dwt.com

*Attorneys for Defendants The New York Times Company and Taylor Lorenz*

## <u>CERTIFICATE OF SERVICE</u>

I, Katherine M. Bolger, hereby certify that on January 20, 2022, a copy of the foregoing

document was filed electronically and served by e-mail to all parties of record via ECF.

<u>*/s/ Katherine M. Bolger*</u>
Katherine M. Bolger