UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

---------------------------------------------------------------x

ARIADNA JACOB and INFLUENCES, INC.,  :
                                        :       Case No. 1:21-cv-06807
              Plaintiffs,  :
                                          :
         - against -  :       ORAL ARGUMENT REQUESTED
                                          :
TAYLOR LORENZ and THE NEW YORK  :
TIMES COMPANY,  :
                                          :
             Defendants.  :

---------------------------------------------------------------x

 

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PARTIAL RECONSIDERATION OF JUNE 21, 2023 ORDER
DENYING IN PART DEFENDANTS THE NEW YORK TIMES COMPANY AND
<u>TAYLOR LORENZ'S MOTION TO DISMISS</u>**

Katherine M. Bolger
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Phone:      (212) 489-8230
Fax:         (212) 489-8340
katebolger@dwt.com

*Attorneys for Defendants Taylor Lorenz
and The New York Times Company*

Defendants Taylor Lorenz and The New York Times Company (together, "Defendants") respectfully submit this memorandum of law in support of their motion pursuant to Fed R. Civ P. 59(e) and Local Rule 6.3 for partial reconsideration of the Court's June 21, 2023 Opinion & Order ("Order") granting in part and denying in part Defendants' motion to dismiss the Second Amended Complaint ("SAC") filed by Plaintiffs Ariadna Jacob and Influences, Inc. (together, "Plaintiffs").

## I.   **PRELIMINARY STATEMENT**

This Court should reconsider its decision declining to dismiss Plaintiffs' defamation claim as to Statement 12 because the Court misconstrued the record by failing to distinguish between Ms. Lorenz's use of the phrase "publicly leaked" and the unmodified term "leaked." Under the Court's Order, whether Statement 12 can withstand a motion to dismiss turns on Ms. Lorenz's use of the word "leaked."  The Court misinterpreted Ms. Lorenz's prepublication correspondence as indicating that she thought "leaking" meant broad public disclosure, when in fact she consistently used the word "leak" as synonymous with "unauthorized disclosure."  When Ms. Lorenz indicated the general release of information to the public, she added the qualifier "publicly" before the word "leak"—as did Ms. Jacob's own counsel. This is true both in Ms. Lorenz's prepublication emails and in Statement 12 itself, yet the Order overlooked this distinction.

Using the term "leak" to include the private sharing of information is both accepted in multiple Supreme Court and Second Circuit decisions and in the dictionary Plaintiffs relied upon here. There was, therefore, no contradiction between Ms. Lorenz's prepublication statement that nobody alleged Ms. Jacob had "publicly leaked" nude photos of a client and Mr. Young's claim in Statement 12 that Ms. Jacob "leaked" the photo (without the "publicly" modifier).  Because this alleged contradiction was the sole factual support for the Court's conclusion that Plaintiffs

adequately alleged actual malice, the Court should grant Defendants' motion for partial reconsideration and dismiss the remaining defamation claim.

## II.   <u>BACKGROUND</u>

### A.   The Remaining Statement at Issue

As the Court is aware, Plaintiffs claim they were defamed by an article written by Lorenz and published in *The New York Times* that discussed the disputes between Jacob and her former influencer clients (the "Article"). As relevant here, Plaintiffs take issue with the following statement regarding Jacob's former client Devion Young, previously identified as Statement 12:

> "Right before we parted ways she leaked my nudes and sent them to business partners, people in my house and potential investors to slander my name, saying I was unprofessional," Mr. Young said. "Ms. Jacob informed an internal consultant of the picture's existence," Ms. Jacob's lawyer wrote, and clarified that she did not "publicly" leak the photos.

Dkt. 44-1 at 6; *see also* SAC ¶¶ 57, 60.

### B.   Plaintiffs' SAC and the Court's Order on Defendants' Motion to Dismiss

On June 21, 2023—after Plaintiffs were given a second opportunity to replead actual malice for their defamation claims—this Court issued its Order granting in part and denying in part Defendants' motion to dismiss the SAC. The sole claim not dismissed was Plaintiffs' defamation claim as to Statement 12.

In denying Defendants' motion, the Court accepted Plaintiffs' assertion that the "'definition of 'leak' is 'to allow secret information to become generally known,'" Order at 18, n.15 (citing *Cambridge Dictionary*), and held that Plaintiffs sufficiently alleged actual malice as to Statement 12 because:

> [T]he relevant prepublication communications show that Lorenz called into question the truth of the assertion that Jacob "leaked" the photos, and she nevertheless published the statement saying as much. Specifically, before the Article was published, Lorenz acknowledged that "Mr. Young and others are alleging that Ms.

Jacob *privately distributed* Mr. Young's illicit photos to others. *No one is alleging that she publicly leaked them*." Doc. 18-4 at 7 (emphasis added). This distinction is decisive here. Indeed, Lorenz laid out her understanding—prior to the Article's publication—that (1) "leaking" connotes sharing something with a broad audience rather than privately, and that (2) "no one" alleged that Jacob had leaked Young's photos. *Id.* Nonetheless, the Article included a quote from Young which stated that "[r]ight before we parted ways [Jacob] *leaked my nudes and sent them* to business partners, people in my house, and potential investors. . . ." Doc. 18-1 at 6 (emphasis added). As published, the quotation suggested that Jacob did indeed "leak" the photos, and it distinguished this action from the private distribution to business partners and others. *See id.*

Order at 19.     The Order dropped the crucial word "publicly" from its analysis.

## III.   <u>ARGUMENT</u>

This Court should reconsider its decision that Plaintiffs pled actual malice as to Statement 12 because the Court misconstrued Ms. Lorenz's understanding of the word "leak" as used in the Article and her prepublication emails. Under Fed. R. Civ. P. 59(e) and Local Rule 6.3, motions for reconsideration should be granted where the moving party "points to a matter that was overlooked by the court, or if there is a need to correct a clear error." *City of Edinburgh Council v. Vodafone Grp. Pub. Co*., No. 07 CIV. 9921PKC, 2009 WL 980304, at *1 (S.D.N.Y. Apr. 9, 2009) (granting motion for reconsideration based on fact that court "overlooked"). As this Court has explained, a motion for reconsideration will be granted where "the court has overlooked controlling decisions or factual matters that were put before it on the underlying motion ... and which, had they been considered, might have reasonably altered the result before the court." *Bleiwas v. City of New York*, No. 15 CIV. 10046 (ER), 2018 WL 401321, at *1 (S.D.N.Y. Jan. 11, 2018) (Ramos, J.) (internal quotation marks and citation omitted) (granting, in part, motion for reconsideration); *Ramos v. City of New York,* No. 15 CIV. 6085 (ER), 2017 WL 3575697, at *1 (S.D.N.Y. Aug. 17, 2017) (Ramos, J.) (granting partial motion for reconsideration); *Ting Qiu v. Shanghai Cuisine, Inc*., No. 18 CIV. 5448 (ER), 2020 WL 8678078, at *2 (S.D.N.Y. July 13, 2020)  (Ramos, J.) (granting, in part, motion for reconsideration based on clear error).  "The standards for relief" under Rule 59(e) are

"identical" to those for motions for reconsideration under Local Civil Rule 6.3." *Zappin v. Cooper*, No. 20-CV-2669 (ER), 2023 WL 1783727, at *7 (S.D.N.Y. Feb. 6, 2023) (citation omitted) (Ramos, J.).

Here, as explained below, the Court committed clear error when it concluded that Plaintiffs had sufficiently alleged actual malice because (1) prior to publication, Ms. Lorenz understood that "leaking"—standing alone without a qualifier—connotes sharing something with a broad audience rather than privately, and (2) the Article accused Ms. Jacob of sharing the photos with the general public by employing the word "leaked."

## A.    Ms. Lorenz's Prepublication Emails Show Her Understanding that "Leak" and "Publicly Leak" Have Different Meanings.

Ms. Lorenz's use of the term "leak" in the Article and her prepublication emails make clear, contrary to the Court's conclusion, that both parties understood the word "leak" just meant "unauthorized disclosure." When the parties meant to indicate a broader public disclosure, the term "leak" needed to be further qualified by "publicly."

Ms. Lorenz used the term "leak" twice in prepublication correspondence with Ms. Jacob's representatives, both times adding "publicly" to indicate broader disclosure. Ms. Jacob's representative also used it the same way. Specifically, Ms. Lorenz first sought comment from Ms. Jacob on the Devion Young allegations on August 11, 2020, when she asked Ms. Jacob to comment on the claim that "Ms. Jacob distributed illicit photos of Mr. Young to others (Note: we have screen recordings showing these messages)." Dkt. 18- 4 at 9; Dkt. 44-3 at 9. Ms. Jacob's representative responded:

> Illicit photos of Mr. Young were brought to Ms. Jacob's attention. As Influences was working on multiple business transactions with Mr. Young, Ms. Jacob informed an internal consultant of the pictures existence, but at no point did she *publicly "leak"* the photos, as Mr. Young has claimed. Chris Weaver, the Influences staff member, was (and is) under an NDA. We have yet to see any proof to this claim and is pure defamation.

Dkt. 18-4 at 22 (emphasis added); Dkt. 44-3 at 22 (emphasis added). Thereafter, on August 12,

Ms. Lorenz responded:

> Hi all, hoping you can provide clarity on one more point.
>
> Regarding Mr. Young's illicit photos, Mr. Young is not alleging that Ms. Jacob *publicly "leaked"* photos. Rather, we have screen recordings showing that Ms. Jacob distributed these photos to others via text message. Does Ms. Jacob care to comment, clarify, or respond to this?

Dkt. 18-4 at 7 (emphasis added); Dkt. 44-3 at 7 (emphasis added). In response that same day, Ms.

Jacob's counsel asked to see the videos. Ms. Lorenz responded denying that request and asking

again:

> Mr. Young and others are alleging that Ms. Jacob privately distributed Mr. Young's illicit photos to others. No one is alleging that she *publicly leaked* them. Does Ms. Jacob care to comment, clarify, or respond to this?

*Id.* (emphasis added).  Ms. Jacob's counsel declined to further provide response.

Ms. Lorenz's use of the qualifier "publicly" to modify "leaked" in this correspondence

shows her understanding that "leak" applies to any unauthorized disclosure of information,

whether to the general public or a narrow audience—otherwise the word "publicly" would be

entirely redundant. The Court's statement that Ms. Lorenz believed "leaking" means "public

distribution" is, therefore, incorrect, and the Court clearly erred by failing to consider Ms. Lorenz's

use of the modifier "publicly" when it held that she understood that "'leaking' connotes sharing

something with a broad audience rather than privately."  Order at 19.

It is worth noting that Ms. Lorenz's use of the word "leak" in Statement 12 to refer to a

more discrete unauthorized disclosure is wholly consistent with case law: numerous decisions from

the Supreme Court, the Second Circuit, and courts in this district have used "leak" to mean private

disclosure to one person or a small group. *See, e.g.*, *United States v. O'Hagan*, 521 U.S. 642, 672

n.17 (1997) (describing "warehousing" as "the practice by which bidders **leak** advance information

of a tender offer to allies and encourage them to purchase the target company's stock before the bid is announced"); *Carpenter v. United States*, 484 U.S. 19, 23 (1987) (referring to petitioner Winans' scheme with two other individuals "to give them advance information as to the timing and contents of" his financial column as "information **leaked** by Winans"); *United States v. Abu-Jihaad*, 630 F.3d 102, 109 (2d Cir. 2010) ("Abu-Jihaad **leaked** classified information about the movements of Navy ships destined for the Persian Gulf to unauthorized persons supportive of jihad."); *S. E. C. v. Geon Indus., Inc.*, 531 F.2d 39, 48–49 (2d Cir. 1976) ("The call for such a meeting should either be kept confidential (with a ban on insider trading or tipping in the meanwhile) or be publicly disclosed; there can be no justification for **leaking** the news to a privileged few."); *Yukos Cap. S.A.R.L. v. Feldman*, No. 15-CV-4964 (LAK), 2016 WL 4532198, at *1 (S.D.N.Y. Aug. 29, 2016) (noting that plaintiffs alleged defendant "has **leaked** and will continue to **leak** damaging information to plaintiffs' litigation adversaries"). It is also wholly consistent with the definition of "leak" in the very dictionary relied on in the Order, which—in addition to the language quoted in the Order—also defines a "leak" as "the act of giving out information privately, esp. when people in authority do not want it to be known." *Leak*, *Cambridge Dictionary*, https://dictionary.cambridge.org/us/dictionary/english/leak (last visited July 5, 2023).

Thus, the Court clearly erred in concluding that Ms. Lorenz understood the word "leak" to be synonymous with "publicly leak."

**B.   No Evidence Supports That Statement 12 Was Made with Actual Malice.**

Unlike Ms. Lorenz's prepublication correspondence, Statement 12 does not modify Mr. Young's use of the term "leaked" with the word "publicly"—to the contrary, it contains Ms. Jacob's express denial of such a public leak.  Thus, Statement 12 does not accuse Ms. Jacob of broadly distributing the photographs of Mr. Young to the public at large, but instead focuses on her admitted private disclosure.

Absent the Court's misconception that Ms. Lorenz only used the word "leak" to refer to public disclosures, the allegations of actual malice are bereft of supporting facts. To allege actual malice, a plaintiff "must plead 'plausible grounds' to infer actual malice by alleging 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of' actual malice." *Biro v. Conde Nast*, 807 F.3d 541, 546 (2d Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  "There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his [statements]," *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968), or had a "high degree of awareness of their probable falsity," *Garrison v. Louisiana,* 379 U.S. 64, 74 (1964); *accord Gross v. N.Y. Times Co.*, 281 A.D.2d 299, 299  (1st Dep't 2001).

The sole basis for the Court's determination that Plaintiffs had pled actual malice was its misunderstanding of Ms. Lorenz's use of the term "leak." Once that clear error as to Ms. Lorenz's understanding is remedied, there are no plausible facts to support Plaintiffs' allegations of actual malice and the Court should grant reconsideration and dismiss the defamation claim as to Statement 12.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that this Court reconsider its Order and dismiss, with prejudice, Plaintiffs' defamation claim as to Statement 12.

Dated: July 5, 2023

*/s/ Katherine M. Bolger*
Katherine M. Bolger
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020-1104
Phone:      (212) 489-8230
Fax:      (212) 489-8340
katebolger@dwt.com

*Attorneys for Defendants Taylor Lorenz
and The New York Times Company*

## <u>CERTIFICATE OF SERVICE</u>

I, Katherine M. Bolger, hereby certify that on July 5, 2023, a copy of the foregoing document was filed electronically and served by e-mail to all parties of record via ECF.

*<u>/s/ Katherine M. Bolger</u>*
Katherine M. Bolger
