UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------

|  |  |  |
|---|---|---|
| ARIADNA JACOB and INFLUENCES, INC., | x<br>:<br>: | No.: 1:21-cv-06807-ER |
| Plaintiffs, | :<br>: | **AMENDED ANSWER TO** |
| - against - | :<br>: | **SECOND AMENDED** |
| TAYLOR LORENZ, and THE NEW YORK<br>TIMES COMPANY, | :<br>:<br>: | **COMPLAINT** |
| Defendants. | :<br>x |  |

--------------------------------------------------------------

Defendants The New York Times Company ("The Times") and Taylor Lorenz

(collectively, "Defendants"), by and through their undersigned counsel, hereby file their Answer

and Affirmative Defenses to Plaintiffs Ariadna Jacob and Influences, Inc.'s ("Plaintiffs") Second

Amended Complaint (the "Complaint") using the same headings and paragraph numbers

employed by Plaintiffs.

## <u>NATURE OF THE ACTION</u>

1.      Defendants admit that Plaintiffs bring this action based on the article entitled

"Trying to Make it Big Online? Getting Signed Isn't Everything" published in *The New York*

*Times* (the "Article"). Defendants respectfully refer this Court to the Article for its true content

and meaning, and except as so admitted and referred, deny the remaining allegations in

Paragraph 1 of the Complaint.[1]

2.      Defendants admit that Plaintiffs brought claims for defamation, tortious

interference with prospective economic advantage, and intentional infliction of emotional

distress and seek actual damages for reputational injuries, compensatory damages, and special

---

[1] Defendants admit that the hyperlink in footnote 1 is a link for the Article.

damages. Defendants otherwise deny the remaining allegations in Paragraph 2. Defendants affirmatively allege that this Court dismissed with prejudice Plaintiffs' claims for tortious interference with prospective economic advantage, intentional infliction of emotional distress, and defamation except for one statement.

**THE PARTIES**

3.      Paragraph 3 contains legal conclusions that require no response. To the extent a response is required, Defendants admit that Jacob is a natural person but lack information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 3, and on that basis, deny the allegations.

4.      Defendants lack information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 4, and on that basis, deny the allegations.

5.      Defendants admit that Lorenz is a natural person and that her place of employment is 1301 K St. NW, Washington, D.C. 20071. Defendants lack information sufficient to form a belief as to the truth or falsity about what Plaintiffs "believe[]" concerning Lorenz's domicile, and on that basis, deny the allegations.

6.      Defendants admit the allegations in Paragraph 6.

**JURISDICTION, VENUE AND CHOICE OF LAW**

7.      Paragraph 7 contains legal conclusions that require no response. To the extent a response is required, Defendants admit that Plaintiffs purport to seek over $75,000.00 in damages, which meets the amount-in-controversy requirement of 28 U.S.C. § 1332.

8.      Paragraph 8 contains legal conclusions that require no response. To the extent a response is required, Defendants do not contest that this Court has personal jurisdiction over Defendants.

9.      Paragraph 9 contains legal conclusions that require no response.  To the extent a response is required, Defendants do not contest that venue is proper in the Southern District of New York.

10.      Paragraph 10 contains legal conclusions that require no response.  To the extent a response is required, Defendants admit that Lorenz resided in California for some time during the reporting of the Article, deny that California law applies, and affirmatively allege that, as this Court has already determined, New York law applies.  *See* ECF No. 26.

## FACTUAL ALLEGATIONS

### Plaintiffs' Backgrounds

11.      Defendants lack information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 11, and on that basis, deny the allegations.

12.      Defendants admit that Jacob was the founder of a company called Influences. Defendants lack information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 12, and on that basis, deny the allegations.[2]

13.      Defendants admit that Jacob has managed TikTok influencers.  Defendants lack information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 13, and on that basis, deny the allegations.

14.      Defendants admit that Plaintiffs were affiliated with Collaboration houses, which are group living arrangements for social media influencers.  Defendants lack information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 14, and on that basis, deny the allegations.

---

[2] Defendants admit that Merriam Webster defines "influencer," in part, as alleged in footnote 2.

15.     Defendants lack information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 15, and on that basis, deny the allegations.

16.     Defendants admit that social media's popularity has continued to grow and that Jacob has worked with influencers.  Defendants lack information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 16, and on that basis, deny the allegations.

17.     Defendants admit that TikTok has expanded in popularity over the last three years.  Defendants lack information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 17, and on that basis, deny the allegations.

18.     Defendants deny the allegations in Paragraph 18.

**Lorenz Targets Jacob by Writing a "Hit Piece"**

19.     Defendants admit that Lorenz was raised in Greenwich, Connecticut, went to Switzerland to study abroad for a year, was a reporter for *The Times* when she wrote the Article, and is currently a columnist for the Washington Post. Defendants admit that Paragraph 19 accurately quotes from the articles included in footnotes 5 and 6 but refers the Court to those articles for their true and correct content.  Defendants otherwise deny the allegations in Paragraph 19.[3,4,5,6]

20.     Defendants admit that Lorenz was represented by UTA in connection with a book deal that was signed in October 2019, some 10 months before publication of the Article. Defendants otherwise deny the allegations in Paragraph 20.

---

[3] Defendants refer the Court to the Tweet cited in footnote 3.
[4] Defendants refer the Court to the Tweet cited in footnote 4.
[5] Defendants admit the hyperlink in footnote 5 is for the article "How The New York Times' Taylor Lorenz gets teenagers to talk about their digital habits" but refer the Court to the article for its true and correct content.
[6] Defendants admit the hyperlink in footnote 6 is for the article "Five journalists on covering the internet in search of meaning, not viral trends" but refer the Court to the article for its true and correct content.

21.     Defendants admit the allegations in Paragraph 21.

22.     Defendants admit that Lorenz explained that she was in the process of writing a story about Jacob and Influences, and otherwise deny the allegations in Paragraph 22.

23.     Defendants admit that Lorenz sent Jacob's colleague a list of statements for Jacob to review and respond to.  Defendants otherwise deny the allegations in Paragraph 23.  In addition, Paragraph 23 contains legal conclusions that require no response.  To the extent a response is required, Defendants deny the allegations concerning *New York Times v. Sullivan*.[7]

24.     Defendants admit that Lorenz received a response to her initial email from Jacob's team and followed up with additional questions.  Defendants otherwise deny the allegations in Paragraph 24.

25.     Defendants admit that Lorenz wanted to speak to Jacob on the record, and that some documents were submitted to Lorenz along with the written responses.  Defendants otherwise deny the allegations in Paragraph 25.

26.     Defendants deny the allegations in Paragraph 26.

**Defendants Publish the Article**

27.     Defendants admit the allegations in Paragraph 27 and refer the refer the Court to the Article for its true content and meaning.

28.     Defendants admit that the Article includes a photograph of Jacob and some influencers she represented and that the caption underneath that photograph includes the sentence: "Members of the house say Ms. Jacob, who runs a talent management firm called Influences, turned their dream into 'a living nightmare.'"  Defendants refer the Court to the

---

[7] Defendants deny the allegations in footnote 7.

5

Article for its true and correct content.  Defendants otherwise deny the allegations in Paragraph 28.

29.     Plaintiffs' claim relevant to the allegations in Paragraph 29 has been dismissed by Court Order.  *See* ECF Nos. 26, 53.  The Court concluded that the Statement in Paragraph 29 is substantially true.  To the extent that part of the allegations remains, Defendants refer the Court to the Article for its true content and meaning.  Defendants otherwise deny the allegations in Paragraph 29.

30.     Plaintiffs' claim relevant to the allegations in Paragraph 30 has been dismissed by Court Order.  *See* ECF No. 26, 53.  To the extent that part of the allegations remains, Defendants deny the allegations in Paragraph 30.

31.     Plaintiffs' claim relevant to the allegations in Paragraph 31 has been dismissed by Court Order.  *See* ECF No. 26, 53.  To the extent that part of the allegation remains, Defendants admit that Lorenz is familiar with the influencer industry, but deny that the allegations in Paragraph 31 correctly describe that industry.  Defendants also admit that Lorenz is the author of the forthcoming book, *Extremely Online: The Untold Story of Fame, Influence, and Power on the Internet.* Defendants otherwise deny the allegation in Paragraph 31.

32.     Plaintiffs' claim relevant to the allegations in Paragraph 32 has been dismissed by Court Order.  *See* ECF No. 26, 53.  The Court concluded that the Statement in Paragraph 32 is substantially true.  To the extent that part of the allegations remains, Defendants refer the Court to the Article for its true content and meaning.  Defendants otherwise deny the allegation in Paragraph 32.

33.     Plaintiffs' claim relevant to the allegations in Paragraph 33 has been dismissed by Court Order.  *See* ECF No. 26, 53.  The Court concluded that the Statement in Paragraph 33 is

substantially true. To the extent that part of the allegations remains, Defendants refer the Court to the Article for its true content and meaning. Defendants lack information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 33, and on that basis, deny the allegations.

34.     Plaintiffs' claim relevant to the allegations in Paragraph 34 has been dismissed by Court Order. *See* ECF No. 53. To the extent that part of the allegations remains, Defendants lack information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 34, and on that basis, deny the allegations.

35.     Plaintiffs' claim relevant to the allegations in Paragraph 35 has been dismissed by Court Order. *See* ECF No. 53. To the extent that part of the allegations remains, Defendants deny the allegation in Paragraph 35.

36.     Plaintiffs' claim relevant to the allegations in Paragraph 36 has been dismissed by Court Order. *See* ECF No. 53. To the extent that part of the allegations remains, Defendants admit that Lorenz is familiar with the influencer industry, but deny that Paragraph 36 accurately characterizes that industry. Defendants lack information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 36 and on that basis, deny the allegations.

37.     Plaintiffs' claim relevant to the allegations in Paragraph 37 has been dismissed by Court Order. *See* ECF Nos. 26, 53. The Court concluded that the Statement alleged in Paragraph 37 was not capable of defamatory meaning. To the extent that part of the allegations remains, Defendants refer the Court to the Article for its true content and meaning. Defendants otherwise deny the allegations in Paragraph 37.[8]

---

[8] Defendants admit the hyperlink in footnote 6 is for the article "Delayed Moves, Poolside Videos and Postmates Spon: The State of TikTok Collab Houses," but refer the Court to the article for its true and correct content.

38.     Plaintiffs' claim relevant to the allegations in Paragraph 38 has been dismissed by Court Order. *See* ECF No. 53. The Court concluded that Plaintiffs did not plead actual malice as to the Statement alleged in Paragraph 38. To the extent that part of the allegations remains, Defendants refer the Court to the Article for its true content and meaning. Defendants otherwise deny the allegations in Paragraph 38.

39.     Plaintiffs' claim relevant to the allegations in Paragraph 39 has been dismissed by Court Order. *See* ECF Nos. 26, 53. The Court concluded that the Statement alleged in Paragraph 39 was not capable of defamatory meaning. To the extent that part of the allegations remains, Defendants refer the Court to the Article for its true content and meaning.

40.     Plaintiffs' claim relevant to the allegations in Paragraph 40 has been dismissed by Court Order. *See* ECF Nos. 26, 53. The Court concluded that the Statement alleged in Paragraph 40 was not capable of defamatory meaning. To the extent that part of the allegations remains, Defendants refer the Court to the Article for its true content and meaning. Defendants otherwise deny the allegation in Paragraph 40.[9,10,11]

41.     Plaintiffs' claim relevant to the allegations in Paragraph 41 has been dismissed by Court Order. *See* ECF Nos. 26, 53. The Court concluded that the Statement alleged in Paragraph 41 was not capable of defamatory meaning. To the extent that part of the allegations remains, Defendants refer the Court to the Article for its true content and meaning. Defendants otherwise deny the allegations in Paragraph 41.

---

[9] Defendants admit that the hyperlink in footnote 9 is to the video *Meeting My Hero*, but refer the Court to the video for its true and correct content.

[10] Defendants admit that the hyperlink in footnote 10 is to the video *Gary Vee Zoom + Influences TikTok Creators and Friends*, but refer the Court to the video for its true and correct content.

[11] Defendants admit that the hyperlink in footnote 11 is to the video *Gary Vee offers talent a Super Bowl commercial*, but refer the Court to the video for its true and correct content.

42.     Plaintiffs' claim relevant to the allegations in Paragraph 42 has been dismissed by Court Order.  *See* ECF Nos. 26, 53.  The Court concluded that the Statement alleged in Paragraph 41 was not capable of defamatory meaning. To the extent that part of the allegations remains, Defendants admit that Lorenz wrote the 2018 article "When a Sponsored Facebook Post Doesn't Pay Off" and refer the Court to that article for its true content and meaning.  Defendants otherwise deny the allegations in Paragraph 42.[12]

43.     Plaintiffs' claim relevant to the allegations in Paragraph 43 has been dismissed by Court Order.  *See* ECF Nos. 26, 53.  To the extent that part of the allegations remains, Defendants refer the Court to the Article for its true content and meaning.  Defendants otherwise deny the allegations in Paragraph 43.[13]

44.     Plaintiffs' claim relevant to the allegations in Paragraph 44 has been dismissed by Court Order.  *See* ECF No. 53.  The Court concluded that Plaintiffs failed to plead actual malice as to the Statement alleged in Paragraph 44. To the extent that part of the allegations remains, Defendants refer the Court to the Article for its true content and meaning.  Defendants otherwise deny the allegations in Paragraph 44.

45.     Plaintiffs' claim relevant to the allegations in Paragraph 45 has been dismissed by Court Order.  *See* ECF No. 53.  The Court concluded that Plaintiffs failed to plead actual malice as to the Statement alleged in Paragraph 45. To the extent that part of the allegations remains, Defendants refer the Court to the Article for its true content and meaning.  Defendants otherwise deny the allegations in Paragraph 45.

---

[12] Defendants admit that the hyperlink in footnote 12 is to the article "When a Sponsored Facebook Post Doesn't Pay Off" but refer the Court to the article for its true and correct content.
[13] Footnote 13 contains a legal conclusion to which no response is required.

46.     Plaintiffs' claim relevant to the allegations in Paragraph 46 has been dismissed by Court Order.  *See* ECF No. 53.  The Court concluded that Plaintiffs failed to plead actual malice as to the Statement alleged in Paragraph 46. To the extent that part of the allegations remains, admit that Lorenz published an article entitled "Delayed Moves, Poolside Videos and Postmates Spon: The State of TikTok Collab Houses" and refer the Court to that article for its true content and meaning.  Defendants otherwise deny the allegations in Paragraph 46.

47.     Plaintiffs' claim relevant to the allegations in Paragraph 47 has been dismissed by Court Order.  *See* ECF No. 53.  The Court concluded that Plaintiffs failed to plead actual malice as to the Statement alleged in Paragraph 47. To the extent that part of the allegations remains, Defendants refer the Court to the Article for its true content and meaning.  Defendants otherwise deny the allegations in Paragraph 47.

48.     Plaintiffs' claim relevant to the allegations in Paragraph 48 has been dismissed by Court Order.  *See* ECF No. 53.  To the extent that part of the allegations remains, Defendants lack information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 48, and on that basis, deny the allegations.

49.     Plaintiffs' claim relevant to the allegations in Paragraph 49 has been dismissed by Court Order.  *See* ECF Nos 53.  To the extent that part of the allegations remains, Defendants deny the allegations in Paragraph 49.

50.     Plaintiffs' claim relevant to the allegations in Paragraph 50 has been dismissed by Court Order.  *See* ECF Nos. 26, 53.  The Court concluded the Statement alleged in Paragraph 50 is substantially true.  To the extent that part of the allegations remains, Defendants deny the allegations in Paragraph 50.

51.     Plaintiffs' claim relevant to the allegations in Paragraph 50 has been dismissed by Court Order.  *See* ECF Nos. 26, 53.  To the extent that part of the allegations remains, Defendants deny the allegations in Paragraph 51.

52.     Plaintiffs' claim relevant to the allegations in Paragraph 52 has been dismissed by Court Order.  *See* ECF Nos. 26, 53.  To the extent that part of the allegations remains, Defendants lack information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 52, and on that basis, deny the allegations.

53.     Plaintiffs' claim relevant to the allegations in Paragraph 53 has been dismissed by Court Order.  *See* ECF Nos. 26, 53.  The Court concluded that the Statement alleged in Paragraph 53 is substantially true.  To the extent that part of the allegations remains, Defendants refer the Court to the Article for its true content and meaning.  Defendants otherwise deny the allegations in Paragraph 53.

54.     Plaintiffs' claim relevant to the allegations in Paragraph 54 has been dismissed by Court Order.  *See* ECF Nos. 26, 53.  To the extent that part of the allegations remains, Defendants deny the allegations in Paragraph 54.

55.     Plaintiffs' claim relevant to the allegations in Paragraph 55 has been dismissed by Court Order.  *See* ECF Nos. 53.  The Court concluded that the Statement alleged in Paragraph 55 is substantially true.  To the extent that part of the allegations remains, Defendants refer the Court to the Article for its true content and meaning.  Defendants lack information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 55 concerning the California Public Utilities Commission, and on that basis, deny the allegations. Defendants otherwise deny the allegations in Paragraph 55.

56. Plaintiffs' claim relevant to the allegations in Paragraph 56 has been dismissed by Court Order. *See* ECF No. 53. To the extent that part of the allegations remains, Defendants deny the allegations in Paragraph 56.

57. Defendants admit that the Article quotes Young as saying "Right before we parted ways she leaked my nudes and sent them to business partners, people in my house and potential investors to slander my name, saying I was unprofessional" and refer the Court to the Article for its true and correct contents. Defendants deny that this Statement was false. Lorenz was informed by multiple sources that Jacob leaked—that is, distributed—the nude photograph. For example, one source told Lorenz, "I saw messages [from Jacob] with Devion's nudes." Another said that Jacob "sent the photos to everyone, after I was getting text messages about it. It was like did you see Devion's nudes Ari leaked them" and that "It was a video of Devion with his d**k out on the table. It was in a telegram group chat." Lorenz also informed Jacob that she had screen recordings showing that Jacob had distributed the nude photographs. This recording is a video of the text message that Jacob sent to Chris Weaver, who was affiliated with Influences, saying "I defended Devion when someone warned me about these images going around," followed by the nude photographs. Lorenz received this video during the newsgathering process. In addition, Jacob admits that she distributed the photographs. As her counsel told Lorenz: "Jacob informed an internal consultant" about the photographs.

58. Defendants deny the allegation that it "could and should" have confirmed that the "nudes had been circulated for weeks." Defendants lack information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 58, and on that basis, deny the allegations.

59.     Defendants lack information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 59, and on that basis, deny the allegations.

60.     Defendants admit that Jacob informed Lorenz that Jacob told an internal consultant about the photograph.  Defendants lack information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 60, and on that basis, deny the allegations.

61.     Defendants lack information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 61 concerning text messages between Jacob and Young, and on that basis, deny the allegations. Defendants deny the remaining allegations in Paragraph 61.  The Article does not say that Jacob publicly leaked the photograph, and Defendants refer the Court to the Article for its true and correct content.  As Lorenz explained to Jacob during their pre-publication communications: "Mr. Young and others are alleging that Ms. Jacob *privately* distributed Mr. Young's illicit photos to others. No one is alleging that she *publicly leaked* them." Dkt. 18-4 at 7 (emphasis added).  In addition, the video Lorenz was provided pre-publication of Jacob's texts to the internal consultant includes nude photographs of Mr. Young.

62.     Defendants admit that the Article stated Mr. Young's allegation that Jacob "leaked" to certain people, as well as Jacob's denial that she had not "publicly leaked" the photographs and that the screenshot is an accurate representation of Lorenz's tweet. Defendants deny that the statement was false for the reasons explained in response to the allegations contained in Paragraphs 57-61.

63.     Plaintiffs' claim relevant to the allegations in Paragraph 63 has been dismissed by Court Order.  *See* ECF Nos. 26, 53.  To the extent that part of the allegations remains,

Defendants refer the Court to the Article for its true content and meaning. Defendants otherwise deny the allegations in Paragraph 63.

64. Plaintiffs' claim relevant to the allegations in Paragraph 64 has been dismissed by Court Order. *See* ECF No. 53. Th Court concluded that Plaintiffs failed to plead actual malice as to the Statement alleged in Paragraph 64. To the extent that part of the allegations remains, Defendants refer the Court to the Article for its true content and meaning. Defendants otherwise deny the allegations in Paragraph 64.

65. Plaintiffs' claim relevant to the allegations in Paragraph 65 has been dismissed by Court Order. *See* ECF No. 53. The Court concluded that Plaintiffs failed to plead actual malice as to the Statement alleged in Paragraph 65. To the extent any allegations remain, Defendants lack information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 65, and on that basis, deny the allegations.

66. Plaintiffs' claim relevant to the allegations in Paragraph 66 has been dismissed by Court Order. *See* ECF No. 53. To the extent a response is required, Defendants admit the allegations in Paragraph 66, and affirmatively allege that "Delayed Moves" was published on May 21, 2020, months before the Article at issue.

67. Plaintiffs' claim relevant to the allegations in Paragraph 67 has been dismissed by Court Order. *See* ECF No. 53. To the extent a response is required, Defendants admit that Jacob texted Lorenz that "we ware [sic] going got pause on Alex French and Ellie Zeiler on the GTV" as shown in the screen shot included with Paragraph 67, months before the Article at issue was published and not in connection with the Article. Defendants lack information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 67, and on that basis, deny the allegations.

68. Plaintiffs' claim relevant to the allegations in Paragraph 68 has been dismissed by Court Order. *See* ECF No. 53. Defendants admit that Jacob texted Lorenz that Ms. Zeiler could be "loop[ed] . . . in" to a conversation with Jacob's PR team "if needed," as shown from the screenshot included in Paragraph 68.[14] This communication occurred on May 8, 2020, months before the Article at issue was published.

69. Plaintiffs' claim relevant to the allegations in Paragraph 69 has been dismissed by Court Order. *See* ECF No. 53. To the extent that part of the allegations remains, Defendants deny the allegations in Paragraph 69.

70. Plaintiffs' claim relevant to the allegations in Paragraph 70 has been dismissed by Court Order. *See* ECF Nos 53. The Court concluded that the Plaintiffs did not plead that Statement related to Paragraph 70 was made with actual malice. To the extent that part of the allegations remains, Paragraph 70 contains legal conclusions that require no response. To the extent any response is required, Defendants deny the allegations in Paragraph 70.

**The Devastating Aftermath of Defendants' Lies**

71. Defendants lack information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 71, and on that basis, deny the allegations.

72. Defendants lack information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 72, and on that basis, deny the allegations.

73. Defendants lack information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 73, and on that basis, deny the allegations.

**Lorenz Had Been Plotting Her "Hit Piece" Article Since as Early as April 2020**

74. Defendants deny the allegations in Paragraph 74.

---

[14] Defendants lack information sufficient to form a belief as to the truth or falsity of the allegations in footnote 14, and on that basis, deny the allegations.

75.     Defendants deny the allegations in Paragraph 75.

76.     Defendants lack information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 76, and on that basis, deny the allegations.

77.     Defendants admit that Lorenz had conversations with certain influencers about their experience working with Jacob.  Defendants deny that there was a "scheme" involving Cordero and Lorenz.  Defendants lack information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 77, and on that basis, deny the allegations.

78.     Plaintiffs' claim relevant to the allegations in Paragraph 78 has been dismissed by Court Order.  *See* ECF No. 53.  To the extent that any allegations remain, Defendants deny that Lorenz applied a "pressure campaign" to members of the KND house.  Defendants lack information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 78, and on that basis, deny the allegations.

79.     Plaintiffs' claim relevant to the allegations in Paragraph 79 has been dismissed by Court Order.  *See* ECF No. 53.  To the extent that any allegations remain, Defendants deny that Lorenz pressured and lied to her sources and deny the remaining allegations in Paragraph 79.

80.     Plaintiffs' claim relevant to the allegations in Paragraph 80 has been dismissed by Court Order.  *See* ECF No. 53.  To the extent that any allegations remain, Defendants admit that Lorenz wrote an article about Hype House, entitled, "Hype House and the Los Angeles TikTok Mansion Gold Rush" and refer the Court to the article for its true content and meaning. Defendants also admit that the screenshot in Paragraph 80 is an accurate representation of Lorenz's re-Tweet of the Article.  Defendants otherwise deny the allegations in Paragraph 80.[15]

---

[15] Defendants admit that the hyperlink in footnote 15 is a link for the article "Hype House and the Los Angeles TikTok Mansion Gold Rush" but refer the Court to the article for its true and correct content.

81.     Plaintiffs' claim relevant to the allegations in Paragraph 81 has been dismissed by Court Order.  *See* ECF No. 53.  To the extent that part of the allegations remains, Defendants refer the Court to the Article for its true content and meaning.  Defendants otherwise deny the allegation in Paragraph 81.

### Lorenz Acted Intentionally to Harm to Plaintiffs

82.     Plaintiffs' claim relevant to the allegations in Paragraph 82 has been dismissed by Court Order.  *See* ECF No. 53.  To the extent that any allegations remain, Defendants admit that Lorenz requested the addresses of the KND, Drip Crib and GIV houses for purposes of fact checking but deny that Jacob told Lorenz that she was living at the KND house then or at any time.  Defendants otherwise deny the allegations in Paragraph 82.

83.     Plaintiffs' claim relevant to the allegations in Paragraph 83 has been dismissed by Court Order.  *See* ECF No. 53.  To the extent that any allegations remain, Defendants admit that the Article includes a link to Zillow and that Paragraph 83 accurately quotes from an interview the interview cited at footnote 16.  Defendants otherwise deny the allegations in Paragraph 83. Defendants affirmatively allege that Lorenz did not know that Jacob lived in the KND house when the Article was published and, on the contrary, Lorenz believed the house was vacant.[16]

### Lorenz Has a Lengthy History of Reckless, Bad Faith "Reporting"

84.     Plaintiffs' claim relevant to the allegations in Paragraph 84 has been dismissed by Court Order.  *See* ECF No. 53.  To the extent that any allegations remain, Defendants admit that Lorenz wrote a story about I'm Shmacked entitled "Thousands of College Kids Paid to Work for a Viral Party Kingpin. What Could Go Wrong?" and refers the Court to that article for its true content and meaning. Defendants affirmatively allege that Arya Toufanian lost his lawsuit

---

[16]  Defendants admit that the hyperlink in footnote 16 is to an MSNBC segment called "Journalists Face Online Harassment" but refer the Court to the video for its true and correct content.

against Lorenz based on this article and further allege that Mr. Toufanian has been ordered to pay the defendant's legal fees. *See Toutanian* [sic] *v. Lorenz*, Case No. 2020-CA-000035-B (D.C Super. Ct. 2020).

85. Plaintiffs' claim relevant to the allegations in Paragraph 85 has been dismissed by Court Order. *See* ECF No. 53. To the extent that any allegations remain, Defendants deny the allegations in Paragraph 85. Defendants affirmatively allege that Arya Toufanian lost his lawsuit against Lorenz based on this article and further allege that Mr. Toufanian has been ordered to pay the defendant's legal fees. *See Toutanian* [sic] *v. Lorenz*, Case No. 2020-CA-000035-B (D.C Super. Ct. 2020).

86. Plaintiffs' claim relevant to the allegations in Paragraph 86 has been dismissed by Court Order. *See* ECF No. 53. To the extent that any allegations remain, Defendants admit that Lorenz—who has recently won a World Influencers Award for top tech and media influencer and who, in 2020, was named to Fortune's 40 Under 40 list of leaders in Media and Entertainment— left the *Times* and now works for *The Washington Post*, and otherwise deny the allegations in Paragraph 86.

87. Plaintiffs' claim relevant to the allegations in Paragraph 87 has been dismissed by Court Order. *See* ECF No. 53. To the extent that any allegations remain, Defendants deny the allegations in Paragraph 87, except insofar as Ms. Lorenz admits she is not a person named Bob Woodward.

**Lorenz's Hunger for Fame and Loyalty to UTA Motivated Her to Defame Plaintiffs**

88. Defendants deny the allegations in Paragraph 88.

89.     Defendants admit that Lorenz was represented by an agent from UTA in connection with a book deal that was signed in October 2019, some 10 months before publication of the Article.  Defendants otherwise deny the allegations in Paragraph 89.[17]

90.     Defendants deny the allegations in Paragraph 90.

91.     Defendants deny the allegations in Paragraph 91.

92.     Defendants admit that Lorenz published the article cited in footnote 18 entitled "These Top Hollywood Agents Are Signing All The Influencers" and that it features UTA, and refer the Court to the article for its true and correct content.  Defendants admit that Lorenz did not disclose her relationship with UTA, but deny that such disclosure is required or necessary.[18]

93.     Defendants admit that *The Times* adheres to ethical journalism standards and that these standards are contained in the Ethical Journalism Guidebook, which includes the quotes in Paragraph 93.  Defendants deny that Lorenz violated these standards. Defendants otherwise deny the remaining allegations in Paragraph 93.[19]

94.     Defendants admit that Goodfried and Weinstein are featured in the article cited in footnote 18 entitled "These Top Hollywood Agents Are Signing All The Influencers" and refer the Court to that article for its true and correct content.  Defendants lack information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 94, and on that basis, deny the allegations.

95.     Defendants deny the allegations in Paragraph 95.

---

[17] Defendants admit the hyperlink in footnote 17 is for the article "UTA Publishing Builds Its Client List" but refer the Court to the article for its true and correct content.
[18] Defendants admit the hyperlink in footnote 18 is for the article "Top Hollywood Agents are Signing All the Influencers" but refer the Court to the article for its true and correct content.
[19] Defendants admit that the hyperlink in footnote 19 is to Ethical Journalism: A Handbook of Values and Practices for the News and Opinion Departments.

96. Defendants admit that the Article was published three days after August 11, 2020, but deny that "Lorenz and UTA were working together and shared a motive to harm Plaintiffs." Defendants otherwise lack information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 96, and on that basis, deny the allegations.

97. Defendants lack information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 97, and on that basis, deny the allegations.

98. Defendants deny the allegations in Paragraph 98.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Defamation

### (By Plaintiffs Against Defendants)

99. Defendants incorporate and repeat as if fully set forth herein their responses to the allegations in each Paragraph above.

100. Plaintiffs' claim relevant to the allegations in Paragraph 100, other than 100(d), has been dismissed by Court Order. *See* ECF No. 53. To the extent that part of the allegations remains, Defendants deny the allegations in Paragraph 100.

    a) Plaintiffs' claim relevant to the allegations in Paragraph 100(a) has been dismissed by Court Order. *See* ECF No. 53.

    b) Plaintiffs' claim relevant to the allegations in Paragraph 100(b) has been dismissed by Court Order. *See* ECF No. 53.

    c) Plaintiffs' claim relevant to the allegations in Paragraph 100(c) been dismissed by Court Order. *See* ECF No. 53.

d) Defendants deny that the statement in Paragraph 100(d) is a false statement of fact.

e) Plaintiffs' claim relevant to the allegations in Paragraph 100(e) has been dismissed by Court Order. *See* ECF No. 53.

f) Plaintiffs' claim relevant to the allegations in Paragraph 100(f) has been dismissed by Court Order. *See* ECF No. 53.

101. Plaintiffs' claim relevant to the allegations in Paragraph 101, other than 101(d), has been dismissed by Court Order. *See* ECF No. 53. To the extent that part of the allegations remains, Defendants deny the allegations in Paragraph 101.

a) Plaintiffs' claim relevant to the allegations in Paragraph 101(a) has been dismissed by Court Order. *See* ECF No. 53.

b) Plaintiffs' claim relevant to the allegations in Paragraph 101(b) has been dismissed by Court Order. *See* ECF No. 53.

c) Plaintiffs' claim relevant to the allegations in Paragraph 101(c) been dismissed by Court Order. *See* ECF No. 53.

d) Defendants deny that the statement in Paragraph 101(d) is a false statement of fact.

e) Plaintiffs' claim relevant to the allegations in Paragraph 101(e) has been dismissed by Court Order. *See* ECF No. 53.

f) Plaintiffs' claim relevant to the allegations in Paragraph 101(f) has been dismissed by Court Order. *See* ECF No. 53

102. Defendants admit the allegations in Paragraph 102.

103.     Plaintiffs' claim relevant to the allegations in Paragraph 103, other than as to the statement in Paragraph 100(d), has been dismissed by Court Order.  *See* ECF No. 53.  To the extent that part of the allegations remains, Paragraph 103 contains legal conclusions that require no response.  To the extent any response is required, Defendants deny the allegations in Paragraph 103.

104.     Plaintiffs' claim relevant to the allegations in Paragraph 104, other than as to the statement in Paragraph 100(d), has been dismissed by Court Order.  *See* ECF No. 53.  To the extent that part of the allegations remains, Paragraph 104 contains legal conclusions that require no response.  To the extent any response is required, Defendants deny the allegations in Paragraph 104.

105.     Plaintiffs' claim relevant to the allegations in Paragraph 105, other than as to the statement in Paragraph 100(d), has been dismissed by Court Order.  *See* ECF No. 53.  To the extent that part of the allegations remains, Paragraph 105 contains legal conclusions that require no response.  To the extent any response is required, Defendants deny the allegations in Paragraph 105.

106.     Plaintiffs' claim relevant to the allegations in Paragraph 106, other than as to the statement in Paragraph 100(d), has been dismissed by Court Order.  *See* ECF No. 53.  To the extent that part of the allegations remains, Paragraph 106 contains legal conclusions that require no response.  To the extent any response is required, Defendants deny the allegations in Paragraph 106.

107.     Plaintiffs' claim relevant to the allegations in Paragraph 107, other than as to the statement in Paragraph 100(d), has been dismissed by Court Order.  *See* ECF No. 53.  To the extent that part of the allegations remains, Paragraph 107 contains legal conclusions that require

no response.  To the extent any response is required, Defendants deny the allegations in Paragraph 107.

## SECOND CAUSE OF ACTION

### Tortious Interference with Prospective Economic Advantage

### (By Plaintiffs Against Defendants)

108.    Defendants incorporate and repeat as if fully set forth herein their responses to the allegations in each Paragraph above.

109.    Plaintiffs' claim relevant to the allegations in Paragraph 109 has been dismissed by Court Order.  *See* ECF No. 53.  To the extent that part of the allegations remains, Defendants admit the allegations in Paragraph 109.

110.    Plaintiffs' claim relevant to the allegations in Paragraph 110 has been dismissed by Court Order.  *See* ECF No. 53.  To the extent that part of the allegations remains, Defendants deny the allegations in Paragraph 110.

111.    Plaintiffs' claim relevant to the allegations in Paragraph 111 has been dismissed by Court Order.  *See* ECF No. 53.  To the extent that part of the allegations remains, Paragraph 111 contains legal conclusions that require no response.  To the extent any response is required, Defendants the allegations in Paragraph 111.

112.    Plaintiffs' claim relevant to the allegations in Paragraph 112 has been dismissed by Court Order.  *See* ECF No. 53.  To the extent that part of the allegations remains, Paragraph Defendants deny the allegations in Paragraph 112.

113.    Plaintiffs' claim relevant to the allegations in Paragraph 113 has been dismissed by Court Order.  *See* ECF No. 53.  To the extent that part of the allegations remains, Paragraph

113 contains legal conclusions that require no response. To the extent any response is required, Defendants deny the allegations in Paragraph 113.

## THIRD CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### (By Jacob Against Defendants)

114.    Defendants incorporate and repeat as if fully set forth herein their responses to the allegations in each Paragraph above.

115.    Plaintiffs' claim relevant to the allegations in Paragraph 115 has been dismissed by Court Order. *See* ECF No. 53. To the extent that part of the allegations remains, Paragraph 115 contains legal conclusions that require no response. To the extent any response is required, Defendants deny the allegations in Paragraph 115.

116.    Plaintiffs' claim relevant to the allegations in Paragraph 116 has been dismissed by Court Order. *See* ECF No. 53. To the extent that part of the allegations remains, Defendants lack information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 116, and on that basis, deny the allegations.

117.    Plaintiffs' claim relevant to the allegations in Paragraph 117 has been dismissed by Court Order. *See* ECF No. 53. To the extent that part of the allegations remains, Paragraph 117 contains legal conclusions that require no response. To the extent any response is required, Defendants deny the allegations in Paragraph 117.

### <u>RESPONSE TO PRAYER FOR RELIEF</u>

As to the WHEREFORE clause in the Complaint, Defendants deny that Plaintiffs are entitled to any relief. Defendants demand a jury on all triable issues.

### <u>GENERAL DENIAL</u>

Each numbered paragraph in this Answer responds to the identically numbered paragraph in the Complaint. Defendants deny all allegations, declarations, claims, or assertions in the Complaint that are not specifically admitted in this Answer. To the extent the headings contained in the Complaint constitute allegations, such allegations are denied.

## AFFIRMATIVE DEFENSES

Further responding to the Complaint, Defendants assert the following defenses. Defendants do not admit to having the burden of proof and/or the burden of persuasion as to any of these defenses. By designating the following as defenses, Defendants do not in any way waive or limit any defenses that are or may be raised by their denials, allegations, and averments set forth herein. The defenses are pleaded in the alternative, are raised to preserve Defendants' right to assert such defenses and are raised without prejudice to Defendants' ability to raise other and further defenses. Defendants reserve the right to amend, supplement, and/or otherwise modify this Answer, including without limitation the right to assert additional defenses that become known to it through discovery or otherwise.

## FIRST DEFENSE

The Complaint, and each of its claims for relief, is barred because it fails to state a claim upon which relief can be granted against Defendants.

## SECOND DEFENSE

Plaintiffs' claims are barred because the only remaining challenged statement is true or substantially true and thus cannot be the basis for a defamation action. As indicated in Defendants' responses to Paragraphs 57-62 above, Jacob did "leak" the photograph. "Leak," as used in the Article, refers to limited distribution of the photograph, not a public dissemination. Multiple sources told Lorenz that Jacob leaked the photographs. For example, one source told Lorenz that

"I saw messages with Devion's nudes." Another said that Jacob "sent the photos to everyone, after I was getting text messages about it. It was like did you see Devion's nudes Ari leaked them" and that "It was a video of Devion with his d**k out on the table. It was in a telegram group chat." And as Lorenz told Jacob, she received a screen recording during the newsgathering process showing that Jacob had distributed the nude photograph. This recording is a video of the text message that Jacob sent to Chris Weaver, who was affiliated with Influences, a message saying, "I defended Devion when someone warned me about these images going around," followed by the nude photographs. In addition, Jacob admitted to Lorenz in pre-publication communications that she distributed the photograph by sending it to an "internal consultant," and further admits in this Complaint that she distributed the photograph to Mr. Young's house manager. *See* ¶ 60. The remaining challenged statement thus is substantially true.

## **THIRD DEFENSE**

Plaintiffs are public figures and they cannot establish, by clear and convincing evidence, that Defendants acted with actual malice as to the publication of the challenged statement. As indicated in Defendants' responses to Paragraphs 57-62 above, Jacob did "leak" the photograph. "Leak," as used in the Article, refers to limited distribution of the photograph, not a public dissemination. Multiple sources told Lorenz that Jacob leaked the photographs. For example, one source told Lorenz that "I saw messages with Devion's nudes." Another said that Jacob "sent the photos to everyone, after I was getting text messages about it. It was like did you see Devion's nudes Ari leaked them" and that "It was a video of Devion with his d**k out on the table. It was in a telegram group chat." And as Lorenz told Jacob, she received a screen recording during the newsgathering process showing that Jacob had distributed the nude photograph. This recording is a video of the text message that Jacob sent to Chris Weaver, who

was affiliated with Influences, a message saying, "I defended Devion when someone warned me about these images going around," followed by the nude photographs. In addition, Jacob admitted to Lorenz in pre-publication communications that she distributed the photograph by sending it to an "internal consultant," and further admits in this Complaint that she distributed the photograph to Mr. Young's house manager. *See* ¶ 60.

Prior to publishing the Article, Lorenz wrote to Jacob's counsel: "Mr. Young and others are alleging that Ms. Jacob privately distributed Mr. Young's illicit photos to others. No one is alleging that she publicly leaked them. Does Ms. Jacob care to comment, clarify, or respond to this?" This communication makes clear Lorenz understood "leak" to apply to any unauthorized disclosure of information, whether to the general public or a narrow audience. This is consistent with the use of "leak" in the Article, in which Mr. Young alleges Jacob engaged in the distribution of his nude photos to certain people. Because Lorenz used "leak" in the Article in a manner that is consistent with her pre-publication understanding of the photograph's distribution, there is no evidence of actual malice.

## **FOURTH DEFENSE**

Plaintiffs' defamation claim is barred because, pursuant to New York Civil Rights Law § 76-a(2), this is an action involving public petition and participation, and Plaintiffs cannot establish, by clear and convincing evidence, that Defendants acted with actual malice as to the publication of the challenged statement. As indicated in Defendants' responses to Paragraphs 57-62 above, Jacob did "leak" the photograph. "Leak," as used in the Article, refers to limited distribution of the photograph, not a public dissemination. Multiple sources told Lorenz that Jacob leaked the photographs. For example, one source told Lorenz that "I saw messages with Devion's nudes." Another said that Jacob "sent the photos to everyone, after I was getting text

27

messages about it. It was like did you see Devion's nudes Ari leaked them" and that "It was a video of Devion with his d**k out on the table. It was in a telegram group chat." And as Lorenz told Jacob, she received a screen recording during the newsgathering process showing that Jacob had distributed the nude photograph. This recording is a video of the text message that Jacob sent to Chris Weaver, who was affiliated with Influences, a message saying, "I defended Devion when someone warned me about these images going around," followed by the nude photographs. In addition, Jacob admitted to Lorenz in pre-publication communications that she distributed the photograph by sending it to an "internal consultant," and further admits in this Complaint that she distributed the photograph to Mr. Young's house manager. *See* ¶ 60.

Prior to publishing the Article, Lorenz wrote to Jacob's counsel: "Mr. Young and others are alleging that Ms. Jacob privately distributed Mr. Young's illicit photos to others. No one is alleging that she publicly leaked them. Does Ms. Jacob care to comment, clarify, or respond to this?" This communication makes clear Lorenz understood "leak" to apply to any unauthorized disclosure of information, whether to the general public or a narrow audience. This is consistent with the use of "leak" in the Article, in which Mr. Young alleges Jacob engaged in the distribution of his nude photos to certain people. Because Lorenz used "leak" in the Article in a manner that is consistent with her pre-publication understanding of the photograph's distribution, there is no evidence of actual malice.

**FIFTH DEFENSE**

To the extent Plaintiffs bring a claim for defamation by implication, that claim is barred because the Defendants did not intend or endorse the purported implication of which Plaintiffs complain.

**SIXTH DEFENSE**

Plaintiff Influences's causes of action are barred, in whole or in part, because the allegedly defamatory statements and implications are not "of and concerning" it. The one remaining allegedly defamatory statement in the Complaint is about Jacob, not Influences.

## SEVENTH DEFENSE

Plaintiffs are estopped by the doctrines of estoppel and law of the case from relitigating issues decided in the Court's prior orders, including the orders at ECF No. 26 dismissing the First Amended Complaint and at ECF No. 53. These issues include: whether California law applies to this litigation, whether the allegedly defamatory statements that have been dismissed from this action are false, defamatory or published with actual malice, whether the Plaintiffs adequately plead a claim for tortious interference with prospective economic advantage and intentional infliction of emotional distress, and all other matters previously determined by this Court.

## EIGHTH DEFENSE

Plaintiffs claim is barred, in whole or in part, by the doctrine of laches because Plaintiffs waited until the end of the statute of limitations to file their Complaint and then amended it outside of the statute of limitations to add new claims.

## NINTH DEFENSE

Plaintiffs' causes of action are barred, in whole or in part, by the doctrine of unclean hands because Plaintiffs, and in particular, Jacob, have been on a months-long smear campaign against Defendants arising from this lawsuit in which they make false and defamatory statements against Lorenz, including while appearing on Tucker Carlson, giving interviews to Fox News[20]

---

[20] Brian Flood, *Entrepreneur files $6.2 million defamation suit against New York Times, star reporter Taylor Lorenz*, Fox News (Aug. 26, 2021), https://www.foxnews.com/media/ariadna-jacob-taylor-lorenz-new-york-times.

and to the *New York Post*,[21] posting on Instagram stories, and releasing press releases through counsel about the lawsuit.[22]  During this publicity campaign, Jacob has repeatedly defamed Lorenz, including by falsely accusing Lorenz of doxxing her on Twitter[23]—which resulted in Lorenz's suspension from Twitter. Jacob has also made false, defamatory statements about Lorenz on YouTube[24] and Twitter,[25] including calling her a "dishonest, agenda-driven journo,"[26] and reposting statements from other individuals who lodged false accusations against Lorenz.[27]

## TENTH DEFENSE

Plaintiffs' claims are barred because they have not suffered any actual harm or damages proximately caused by the challenged statement and any claimed damages are vague, uncertain, imaginary, and speculative.

## ELEVENTH DEFENSE

Plaintiffs' claim for punitive damages fails because it would violate Defendants' right to substantive due process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, § 6 of the New York Constitution because, among other things, the alleged conduct at issue here is not sufficiently reprehensible to warrant any punitive damages recovery.

## TWELFTH DEFENSE

---

[21] Alexandra Steigrad, *NY Times, reporter Taylor Lorenz sued for defamation by TikTok agent*, N.Y. Post (Aug. 16, 2021), https://nypost.com/2021/08/16/ny-times-reporter-taylor-lorenz-sued-for-defamation-by-tiktok-agent/.
[22] *Ariadna Jacob v. The New York Times*, Dhillon Law Group Inc., available at https://www.dhillonlaw.com/lawsuits/ariadna-jacob-v-the-new-york-times/.
[23] Ariadna Jacob (@littlemissjacob), Twitter (Nov. 17, 2022, 2:32 PM), https://twitter.com/littlemissjacob/status/1593326157151117312?lang=en.
[24] Chrissie Mayr, *BREAKING: Taylor Lorenz SHOCKING Family Ties Finally Revealed! Ariadna Jacob & Chrissie Mayr EXPOSE*, YouTube (Jun. 22, 2022), https://www.youtube.com/watch?v=Xps96PvB3B8.
[25] Ariadna Jacob (@littlemissjacob), Twitter (Jun. 7, 2022, 7:07 PM), https://twitter.com/littlemissjacob/status/1534311109888548864?lang=en.
[26] Ariadna Jacob (@littlemissjacob), Twitter (Oct. 28, 2022, 10:56 PM), https://twitter.com/littlemissjacob/status/1586190087377018880?lang=en.
[27] Ariadna Jacob (@littlemissjacob), Twitter (Apr. 2, 2022, 1:49 AM), https://twitter.com/littlemissjacob/status/1510132409953443840.

Plaintiffs' claim for punitive damages fails because the challenged statement was not made with common law malice, and Defendants did not commit any outrageous conduct that was malicious, wanton, reckless, or in willful disregard of Plaintiffs' rights.

### THIRTEENTH DEFENSE

Plaintiffs' causes of action are barred, in whole or in part, by her failure to mitigate and/or prevent the damages about which she complains, and any recovery should be reduced in direct proportion to such failure.  In particular, Plaintiffs, particularly Jacob, have been on a months-long smear campaign against Defendants arising from this lawsuit, in which they make false and defamatory statements against Lorenz, including while appearing on Tucker Carlson, giving interviews to Fox News[28] and to the *New York Post*,[29] posting on Instagram stories, and releasing press releases through counsel about the lawsuit.[30]  This media campaign by Jacob has itself republished the alleged defamatory allegation (although it has noticeably failed to note the dismissal of most of her complaint).  Additionally, the malicious nature of Jacob's conduct after the Article was published undoubtedly drove away potential clients and business partners from working with Plaintiffs.


Dated: July 20, 2023

                           Respectfully Submitted,

---

[28] Brian Flood, *Entrepreneur files $6.2 million defamation suit against New York Times, star reporter Taylor Lorenz*, Fox News (Aug. 26, 2021), https://www.foxnews.com/media/ariadna-jacob-taylor-lorenz-new-york-times.

[29] Alexandra Steigrad, *NY Times, reporter Taylor Lorenz sued for defamation by TikTok agent*, N.Y. Post (Aug. 16, 2021), https://nypost.com/2021/08/16/ny-times-reporter-taylor-lorenz-sued-for-defamation-by-tiktok-agent/.

[30] *Ariadna Jacob v. The New York Times*, Dhillon Law Group Inc., available at https://www.dhillonlaw.com/lawsuits/ariadna-jacob-v-the-new-york-times/.

/s/ *Katherine M. Bolger*
Katherine M. Bolger

DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone: (212) 489-8230
katebolger@dwt.com

*Attorneys for Defendants Taylor Lorenz and*
*The New York Times*