UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────

ARIADNA JACOB *and* INFLUENCES, INC.,

                Plaintiffs,

    – *against* –

TAYLOR LORENZ *and* THE NEW YORK TIMES COMPANY,

                Defendants.

**OPINION & ORDER**

21-cv-6807 (ER)

RAMOS, D.J.:

    Plaintiffs Ariadna Jacob and her company, Influences, Inc., brought this defamation action against Defendants Taylor Lorenz and the New York Times. Plaintiffs allege that a New York Times article authored by Lorenz included several defamatory statements about Jacob. As relevant here, the Court granted in part and denied in part Defendants' motion to dismiss the second amended complaint ("SAC"), Doc. 28, on June 21, 2023. *Jacob v. Lorenz*, 2023 WL 4106298, at *15 (S.D.N.Y. June 21, 2023); Doc. 53. The Court held that Plaintiffs had sufficiently alleged a claim with respect to one statement in the article suggesting that Jacob had leaked an individual's nude photographs. Defendants now move for reconsideration and ask the Court to dismiss the surviving claim based on that statement. Doc. 56. For the reasons set forth below, the motion is DENIED. The parties' requests for oral argument, Docs. 58, 62, are DENIED as moot.

**I.    BACKGROUND**

    **A.  Factual Background**

    The Court assumes familiarity with the facts and procedural history set forth in its previous opinion. *See Jacob*, 2023 WL 4106298, at *1–5. In short, the SAC's lone surviving

statement—referred to here and in the Court's prior opinions as Statement 12—concerns Jacob's alleged distribution of nude photographs of influencer Devion Young. *Id.* at *3.

On August 11, 2020, Lorenz emailed Jacob and her team with a list of details that she was "planning to report." Doc. 18-4 at 8. That list included the assertion that "Ms. Jacob distributed illicit photos of Mr. Young to others (Note: we have screen recordings showing these messages)." *Id.* at 9. Jacob's representative responded with a statement from Jacob's attorney that said: "Illicit photos of Mr. Young were brought to Ms. Jacob's attention. As Influences was working on multiple business transactions with Mr. Young, Ms. Jacob informed an internal consultant of the pictures [*sic*] existence, but at no point did she publicly 'leak' the photos, as Mr. Young has claimed." *Id.* at 22.

The next day, Lorenz replied: "Regarding Mr. Young's illicit photos, Mr. Young is not alleging that Ms. Jacob publicly 'leaked' photos. Rather, we have screen recordings showing that Ms. Jacob distributed these photos to others via text message. Does Ms. Jacob care to comment, clarify, or respond to this?" *Id.* at 7. Jacob's attorney answered: "Before responding to this point, are you able to share the videos referenced here for accuracy and validity?" *Id.* Lorenz stated that the materials could not be shared. *Id.* And she reiterated that "Mr. Young and others are alleging that Ms. Jacob privatley [*sic*] distributed Mr. Young's illicit photos to others. No one is alleging that she publicly leaked them." *Id.* Jacob's representative referred Lorenz to the statement provided by Jacob's attorney. *Id.* In a final follow-up message providing an updated list of allegations, Lorenz included the assertion: "Ms. Jacob privately distributed nude

photos of Devion Young via text message." *Id.* at 6. Jacob's representative again referred Lorenz to the statement from Jacob's attorney. *Id.* at 3.

The article was published on August 14, 2020. SAC ¶ 27. With respect to the photographs of Young, the article stated: "'Right before we parted ways she leaked my nudes and sent them to business partners, people in my house and potential investors to slander my name, saying I was unprofessional,' Mr. Young said. 'Ms. Jacob informed an internal consultant of the picture's existence,' Ms. Jacob's lawyer wrote, and clarified that she did not 'publicly' leak the photos." Doc. 18-1 at 6; *see also* SAC ¶ 57.

According to the SAC, the article "alleged that Jacob leaked the photos to industry people for leverage because Young wanted to leave." SAC ¶ 57. Plaintiffs assert that this claim "is completely false, and Defendants knew it." *Id.* The photographs became public weeks before Plaintiffs and Young decided to part ways, so Jacob could not have leaked them in retaliation. *Id.* ¶ 58. Plaintiffs also state that, at the time, Influences had no "business partners" to whom Jacob could have "leaked" the photographs. *Id.* The SAC does acknowledge that Jacob informed an Influences staff member about the photographs and alerted Young's house manager to the situation. *Id.* ¶ 60. But Plaintiffs allege that "[a]t no point did Jacob publicly disseminate or 'leak' the photographs." *Id.* ¶ 61.

**B. Procedural History**

Plaintiffs filed this lawsuit on August 12, 2021, alleging that several statements in the article were defamatory. Doc. 1. After Plaintiffs amended their complaint, Doc. 13, the Court granted Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *Jacob v. Lorenz*, 626 F. Supp. 3d 672, 694 (S.D.N.Y. 2022); Doc. 26. The Court also granted Plaintiffs leave to amend with respect to certain statements, *see Jacob*,

626 F. Supp. 3d at 694, and Plaintiffs did so on October 5, 2022, Doc. 28.  Defendants filed another motion to dismiss, which the Court granted in part and denied in part.  *Jacob*, 2023 WL 4106298, at *15.  For nearly all the remaining statements, the Court again concluded that Plaintiffs had failed to state a claim.  *Id.*[1]

With respect to Statement 12, however, the Court held that the SAC's allegations were sufficient.  *Id.* at *10–11.  The Court explained that "the relevant prepublication communications show that Lorenz called into question the truth of the assertion that Jacob 'leaked' the photos, and she nevertheless published the statement saying as much."  *Id.* at *10.  Accordingly, the Court found that Plaintiffs' allegations as to Statement 12 could survive the motion-to-dismiss stage.  *Id.* at *11.

On July 5, 2023, Defendants moved for reconsideration pursuant to Rule 59(e) and Local Rule 6.3.  Doc. 56.  They ask the Court to dismiss with prejudice Plaintiffs' defamation claim as to Statement 12.  *Id.* at 7.

## II. LEGAL STANDARD

The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked."  *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted).  "A motion for reconsideration should be granted only when the [party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (internal quotation marks and citation omitted).  It is "not a vehicle for relitigating old issues, presenting the case under new theories,

---

[1] The Court also dismissed with prejudice Plaintiffs' tortious interference and intentional infliction of emotional distress claims, *Jacob*, 2023 WL 4106298, at *15, which are not at issue here.

4

securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Survs.*, 684 F.3d at 52 (internal quotation marks and citation omitted).  The decision to grant or deny a motion for reconsideration is within "the sound discretion of the district court." *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009) (citation omitted).

### III.  DISCUSSION

Defendants argue that reconsideration is warranted because "the Court misconstrued the record by failing to distinguish between Ms. Lorenz's use of the phrase 'publicly leaked' and the unmodified term 'leaked.'"  Doc. 57 at 1.  According to Defendants, "both parties understood the word 'leak' just meant 'unauthorized disclosure.'"  *Id.* at 4.  By contrast, the parties used the term "publicly leak" to refer to "a broader public disclosure."  *Id.*  Based on this purported distinction, Defendants assert that the Court "clearly erred in concluding that Ms. Lorenz understood the word 'leak' to be synonymous with 'publicly leak.'"  *Id.* at 6.

These arguments are not persuasive.  As the Court explained in its prior opinion, Lorenz's prepublication messages distinguished between allegations that Jacob "privately distributed" the photos and allegations that Jacob "publicly leaked" the photos.  *Jacob*, 2023 WL 4106298, at *10 (emphases omitted) (quoting Doc. 18-4 at 7).  The communications revealed Lorenz's understanding "that (1) 'leaking' connotes sharing something with a broad audience rather than privately, and that (2) 'no one' alleged that Jacob had leaked Young's photos."  *Id.* (citing Doc. 18-4 at 7).  Despite that understanding, the article included Young's quote that Jacob "*leaked my nudes and sent them* to business partners, people in my house, and potential

investors." *Id.* (quoting Doc. 18-1 at 6).  As the Court explained, that statement suggested that Jacob both leaked the photos *and* privately distributed them to business partners and others.  *Id.*

Defendants' proposed distinction between "leaked" and "publicly leaked" does not change the Court's conclusion.  For one, the parties' prepublication communications do not indicate that Lorenz was drawing such a distinction.  Lorenz repeatedly referred to allegations that Jacob had "distributed illicit photos of Mr. Young to others."  Doc. 18-4 at 9; *see also id.* at 7 ("Ms. Jacob distributed these photos to others via text message"); *id.* ("Ms. Jacob privatley [*sic*] distributed Mr. Young's illicit photos to others"); *id.* at 6 ("Ms. Jacob privately distributed nude photos of Devion Young via text message.").  Lorenz also made clear to Jacob's team that "Mr. Young is not alleging that Ms. Jacob publicly 'leaked' photos."  *Id.* at 7; *see also id.* ("No one is alleging that [Jacob] publicly leaked [the photos].").

None of these statements, however, support Defendants' assertion that Lorenz understood "leak" to mean "any unauthorized disclosure of information."  Doc. 57 at 5.  In fact, Lorenz's messages did not even use the term "leak" without the "publicly" qualifier.  It is difficult to see how the emails could show Lorenz's understanding of a distinction between two terms when she used only one of them.  As the case progresses, of course, Defendants will have the opportunity to offer evidence demonstrating that Lorenz understood the two phrases to have different meanings.  But at this stage, drawing all reasonable inferences in Plaintiffs' favor, the Court cannot conclude that Lorenz was relying on Defendants' proposed distinction.

Nor is the Court persuaded by Defendants' argument that using the term "leak" to refer to the private sharing of information is "wholly consistent" with language in Supreme Court and Second Circuit decisions.  Doc. 57 at 5.  Regardless of how courts have used the term in opinions about unrelated subjects such as insider trading or naval movements, *see id.* at 5–6 (citing cases),

the question is how *Lorenz* understood the term—as Defendants themselves acknowledge, *see* Doc. 63 at 5.  Again, based on the record as it stands, the Court cannot say that Lorenz clearly understood the terms "leaked" and "publicly leaked" to have two distinct meanings.[2]

Finally, Defendants insist that Statement 12 "does not accuse Ms. Jacob of broadly distributing the photographs of Mr. Young to the public at large, but instead focuses on her admitted private disclosure."  Doc. 57 at 6.  That argument cannot be reconciled with the text of Statement 12, which said that Jacob "leaked [Young's] nudes *and* sent them to business partners, people in [Young's] house and potential investors."  Doc. 18-1 at 6 (emphasis added).  If the language before "and" had been omitted, this case might look different:  Defendants could argue that the alleged distributions to business partners and others were consistent with the allegations Lorenz described in her prepublication emails.  Instead, however, the article suggested that Jacob both leaked the photos *and* privately distributed them to others.  *See Jacob*, 2023 WL 4106298, at *10 ("As published, the quotation suggested that Jacob did indeed 'leak' the photos, and it distinguished this action from the private distribution to business partners and others.").  That was inconsistent with Lorenz's prepublication characterization of the allegations.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion for reconsideration is DENIED.  The parties' requests for oral argument, Docs. 58, 62, are DENIED as moot.

---

[2] Defendants' reply brief also cites several cases using the term "'leak' to mean disclosure to an individual or small group."  Doc. 63 at 5–6.  Again, these cases cannot establish Lorenz's understanding of the term.  But they are also inapposite because they appear not to involve situations where the material disclosed was already public.  In this case, the SAC asserts that the photographs had been in circulation for weeks at the time Jacob allegedly distributed them.  SAC ¶ 58.

7

The parties are directed to appear for a telephonic status conference at 10:00 a.m. on November 1, 2023. The parties are directed to dial (877) 411-9748 and enter access code 3029857# when prompted.

The Clerk of Court is respectfully directed to terminate the motions, Docs. 56, 58, 62.

It is SO ORDERED.

Dated: October 10, 2023
       New York, New York

                                                    _____
                                                    Edgardo Ramos, U.S.D.J.